**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Fort Meyers Division**

| | |
|---|---|
| KAREN JARVIS and MICHAEL JARVIS, on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br><br>    v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>                Defendant. | Civil Action No. 14-cv-654-JES-CM |

**<u>PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S</u>**
**<u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.   PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY FTC
     REGULATIONS............................................................................................................ 2

     A.   Defendant's EPA Fuel Economy Estimates Violate Federal Law........................... 2

     B.   Plaintiffs' Claims Are Not Preempted By The EPCA ............................................... 3

     C.   Plaintiffs' Claims Are Not Preempted By FTC Regulations ..................................... 4

II.  DEFENDANT BREACHED ITS WARRANTIES BY
     MISREPRESENTING THE MINI COOPERS' EPA FUEL ECONOMY
     ESTIMATES................................................................................................................. 5

     A.   Defendant's EPA Fuel Economy Advertisements Are Actionable
          Representations, Not Merely Estimates........................................................................ 5

     B.   Plaintiffs State A Claim For Each Of Their Warranty Causes Of
          Action............................................................................................................................ 6

          1.   Breach Of Express Warranty ............................................................................ 6

          2.   Breach Of The Implied Warranty Of Merchantability .................................... 8

          3.   Magnuson-Moss Warranty Act......................................................................... 9

III. PLAINTIFFS STATE A CLAIM FOR EACH REMAINING CAUSE OF
     ACTION ..................................................................................................................... 10

     A.   Plaintiffs' Fraud-Based Claims Meet The Pleading Standards Of
          Rule 9(b) ..................................................................................................................... 10

     B.   Defendant Does Not Argue That Plaintiffs Failed To Adequately
          Plead Their Claims For Fraud And Negligent Misrepresentation ......................... 13

     C.   Plaintiffs State A Claim Under FDUTPA................................................................... 13

     D.   Plaintiffs State A Claim For Unjust Enrichment ...................................................... 14

IV.  THE MINI COOPERS ARE VARIANTS OF THE SAME MODEL ............................... 15

V.   IT IS PREMATURE TO DISMISS PLAINTIFFS' CLASS ACTION
     ALLEGATIONS........................................................................................................... 16

     A.   It Is Premature For The Court To Undertake A Choice Of Law
          Analysis........................................................................................................................ 16

     B.   It Is Premature To Determine The Suitability Of Class Treatment ........................ 18

CONCLUSION...................................................................................................................... 20

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Beaver v. Inkmart, LLC,*
   2012 WL 3822264 (S.D. Fla. Sept. 4, 2012) ........................................................................... 13

*Berenhuer v. Warner-Lambert Co.,*
   2003 WL 23299241 (Fla. 13th Cir. Ct. July 31, 2003)........................................................... 19

*Bland v. Freightliner,*
   206 F. Supp. 2d 1202 (M.D. Fla. 2002)................................................................................... 8

*Bowen v. Wells Fargo Bank, N.A.,*
   2011 WL 3627320 (M.D. Fla. Aug. 17, 2011) ...................................................................... 13

*Brett v. Toyota Motor Sales, U.S.A., Inc.,*
   2008 WL 4329876 (M.D. Fla. Sept. 15, 2008) ............................................................. 4, 7, 14

*Carriuolo v. Gen. Motors LLC,*
   2014 WL 7011022 (S.D. Fla. Dec. 11, 2014) .................................................................. 13, 18

*Cerasani v. Am. Honda Motor Co.,*
   916 So.2d 843 (Fla. Dist. Ct. App. 2005) ............................................................................... 7

*Cohen v. Implant Innovations, Inc.,*
   259 F.R.D. 617 (S.D. Fla. 2008)............................................................................................ 17

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC,*
   332 Fed. Appx. 565 (11th Cir. 2009)..................................................................................... 19

*Costa v. Kerzner Int'l Resorts, Inc.,*
   2011 WL 2519244 (S.D. Fla. June 23, 2011) ....................................................................... 17

*David v. Am. Suzuki Motor Corp.,*
   629 F. Supp. 2d 1309 (S.D. Fla. 2009) .................................................................................. 17

*Davis v. Powertel, Inc.,*
   776 So.2d 971 (Fla. 1st DCA 2000) ...................................................................................... 19

*Desir v. Greenspoon Marder, P.A.,*
   2014 WL 2767230 (S.D. Fla. June 19, 2014) ....................................................................... 19

*Ebin v. Kangadis Food Inc.,*
   297 F.R.D. 561 (S.D.N.Y. 2014) ........................................................................................... 20

*Eli Research, LLC v. Must Have Info Inc.,*
   2014 WL 4540110 (M.D. Fla. Sept. 11, 2014)..................................................................... 18

*Galoski v. Stanley Black & Decker, Inc.,*
   2014 WL 4064016 (N.D. Ohio Aug. 14, 2014) .................................................................... 16

*Gilles v. Ford Motor Co.,*
   24 F. Supp. 3d 1039, (D. Colo. 2014).................................................................................... 12

*Godfrey v. Toyota Motor Sales, U.S.A., Inc.*,
  2008 WL 2397497 (W.D. Ark. June 11, 2008) ...................................................... 14

*Gray v. Toyota Motor Sales*,
  2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ............................................................ 4

*Guenther v. Novartis Pharm. Corp.*,
  2013 WL 1225391 (M.D. Fla. Mar. 27, 2013) ...................................................... 17

*Harnish v. Widener Univ. Sch. of Law*,
  931 F. Supp. 2d 641 (D.N.J. 2013) ....................................................................... 12

*Horton v. Woodman Labs, Inc.*,
  2014 WL 1329355 (M.D. Fla. Apr. 2, 2014) ........................................................ 16

*Howard v. Kerzner Int'l Ltd.*,
  2014 WL 714787 (S.D. Fla. Feb. 24, 2014) ......................................................... 17

*In re Mercedes-Benz Tele Aid Contract Litig.*,
  257 F.R.D. 46 (D.N.J. 2009) ........................................................................... 17, 18

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006) .................................................................................. 12

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*
  *& Prods. Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................ 8

*Karhu v. Vital Pharmaceuticals, Inc.*,
  2013 WL 4047016 (S.D. Fla. Aug. 9, 2013) .......................................... 6, 7, 15, 17

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ............................................................................ 20

*Krause v. Novartis Pharmaceuticals Corporations*,
  2013 WL 785229 (N.D. Fla. Feb. 28, 2013) ........................................................ 18

*Levine v. Wyeth, Inc.*,
  684 F. Supp. 1338 (M.D. Fla. 2010) ...................................................................... 7

*Mesa v. BMW of North America*,
  904 So.2d 450 (Fla. Dist. Ct. App. 2005) .............................................................. 7

*Miles v. Am. Online, Inc.*,
  202 F.R.D. 297 (M.D. Fla. 2001) ......................................................................... 20

*Murphy v. Dulay*,
  768 F.3d 1360 (11th Cir. 2014) .............................................................................. 2

*Paduano v. Am. Honda Motor Co.*,
  169 Cal. App. 4th 1453 (2009) ........................................................................... 4, 7

*Phelan Holdings, Inc. v. Wendy's Int'l, Inc.*,
  2012 WL 3000263 (M.D. Fla. July 3, 2012) ........................................................ 13

*PLIVA, Inc. v. Mensing,*
   131 S.Ct. 2567 (2011) .................................................................................................. 2

*Porter v. Chrysler Group LLC,*
   2013 WL 6839872 (M.D. Fla. Dec. 27, 2013) ......................................................... 15, 16

*Randolph v. J.M. Smucker Co.,*
   2014 WL 1018007 (S.D. Fla. Mar. 14, 2014) ......................................................... 16, 20

*Rentas v. DaimlerChrysler Corp.,*
   936 So.2d 747 (Fla. Dist. Ct. App. 2006) ..................................................................... 7

*Sanchez v. Ford Motor Co.,*
   2014 WL 2218278 (D. Colo. May 29, 2014) ............................................................ 5, 9

*Sanchez-Knutson v. Ford Motor Co.,*
   --- F. Supp. 3d ---, 2014 WL 5139306 (S.D. Fla. Oct. 7, 2014) ..................... 8, 9, 18

*Schojan v. Papa Johns Int'l, Inc.,*
   2014 WL 7178102, (M.D. Fla. Dec. 16, 2014) ............................................................ 20

*Sherman v. Manhattan Ford Lincoln-Mercury Inc.,*
   431 N.Y.S. 2d 949 (N.Y. Sup. Ct. 1980) ...................................................................... 4

*Stalley v. ADS Alliance Data Sys., Inc.,*
   2013 WL 72411 (M.D. Fla. Jan. 7, 2013) .................................................................... 20

*State Farm Mutual Automobile Insurance Company v. Physicians Injury Care Center, Inc.,*
   427 Fed. Appx. 714 (11th Cir. 2011) ........................................................................... 15

*T.W.M. v. Am. Med. Sys., Inc.,*
   886 F. Supp. 842 (N.D. Fla. 1995) ................................................................................ 7

*True v. Am. Honda Motor Co.,*
   520 F. Supp. 2d 1175 (C.D. Cal. 2007) ....................................................................... 12

*United Tech. Corp. v. Mazer,*
   556 F.3d 1260 (11th Cir. 2009) ..................................................................................... 15

*Wagner v. CLC Resorts & Developments, Inc.,*
   2014 WL 3809130 (M.D. Fla. Aug. 1, 2014) .............................................................. 19

*Yvon v. Baja Marine Corp.,*
   495 F. Supp. 2d 1179 (N.D. Fla. 2007) ......................................................................... 9

*Zelyony v. Porsche Cars N. Am., Inc.,*
   2008 WL 1776975 (S.D. Fla. Apr. 16, 2008) ............................................................... 9

*Ziemba v. Cascade Int'l, Inc.,*
   256 F.3d 1194 (11th Cir. 2001) ..................................................................................... 11

**STATUTES**

15 U.S.C. § 2301(1) .......................................................................................................... 9

15 U.S.C. § 2301(3) .................................................................................................... 9

15 U.S.C. § 2301(4) .................................................................................................... 9

15 U.S.C. § 2301(6) .................................................................................................... 9

49 U.S.C. § 32901(11) ............................................................................................. 2, 3

49 U.S.C. § 32908 ................................................................................................ 2, 3, 14

49 U.S.C. § 32908(b) .......................................................................................... 2, 3, 14

49 U.S.C. § 32908(b)(1) ...................................................................................... 2, 3, 14

49 U.S.C. § 32908(d) .................................................................................................. 3

49 U.S.C. § 32908(e) ................................................................................................. 14

Fla. Stat. § 501.203(3)(a) ......................................................................................... 14

Fla. Stat. § 501.203(3)(b) ......................................................................................... 14

Fla. Stat. § 501.212(1) .............................................................................................. 13

Fla. Stat. § 672.314(2) ............................................................................................... 8

**RULES**

Fed. R. Civ. P. 8(d) .............................................................................................. 15, 17

Fed. R. Civ. P. 8(d)(3) .............................................................................................. 15

Fed. R. Civ. P. 9(b) ................................................................................................... 11

**REGULATIONS**

16 C.F.R. § 259.2(a) .................................................................................................... 5

40 C.F.R. § 600.302-12(b)(4) ..................................................................................... 5

## <u>INTRODUCTION</u>

The facts of this case are that Defendant BMW of North America, LLC ("Defendant" or "BMW") attributed fuel economy estimates (the "EPA Fuel Economy Estimates") to its line of Mini Cooper 3-door automobiles (the "Mini Coopers") which did <u>not</u> meet the standards set forth by the United States Environmental Protection Agency (the "EPA"). As a result, the initial EPA Fuel Economy Estimates for the Mini Coopers overstated the actual values in every category – highway, city, and combined – for each of the affected Mini Coopers. *See* Compl. ¶ 3. That is the fundamental allegation of Plaintiffs' complaint. It is confirmed by independent testing administered by the EPA, which, based on its testing, required BMW to restate the EPA Fuel Economy Estimates for the Mini Coopers. *See id.* ¶¶ 3, 7, 8.

Michael and Karen Jarvis (collectively, "Plaintiffs") purchased one of these Mini Coopers for approximately $27,000 in reliance on the EPA Fuel Economy Estimate. *Id.* ¶ 12. Prior to their purchase, Plaintiffs relied "on the representations that the Mini Cooper they bought would get 40 MPG Highway, 29 MPG City, and 32 MPG Combined" pursuant to EPA testing. *Id.* As a result of the overstated EPA Fuel Economy Estimates, "Plaintiffs paid a higher price for the Mini Cooper than they would have paid if accurate fuel economy in MPG had been revealed, and Plaintiffs are incurring higher fuel costs than they otherwise would have" because "the Mini Cooper [was] of a different quality than they were promised." *Id.*

Although Defendant cannot deny that it overstated the EPA Fuel Economy Estimates for the Mini Coopers, it maintains that "EPA fuel-economy values are merely educated estimates, and not guarantees." Def.'s Br. at 6. That statement contradicts the allegations of the Complaint that the EPA Fuel Economy estimates must be calculated pursuant to standardized methods promulgated by the EPA. Compl. ¶ 98. Defendant's statement also contradicts the very purpose

of the EPA Fuel Economy Estimates, which is to "provide consumers with the most accurate, reliable and repeatable fuel economy values."  *Id.* ¶ 3 Ex. A (EPA Press Release).

Plaintiffs allege facts that are simple, clear, and powerful.  They are confirmed by the independent findings of the EPA.  When the basic facts of this case are understood, Defendant's arguments for dismissal must be rejected.  When the facts are that the Defendant put EPA Fuel Economy Estimates on Mini Coopers that were <u>not</u> calculated in accordance with EPA standards, it is difficult to imagine how the Complaint could fail to state a claim that Plaintiffs did not receive the Mini Cooper they believed they purchased.

## ARGUMENT

## I.  PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY FTC REGULATIONS

### A.  Defendant's EPA Fuel Economy Estimates Violate Federal Law

Defendant should not be rewarded for violating the law.  Stated otherwise there is no preemption where, as here, a defendant's conduct violates *both* the applicable federal *and* state laws.  *See Murphy v. Dulay*, 768 F.3d 1360, 1367 (11th Cir. 2014) ("A state law conflicts with federal law when it is 'impossible for a private party to comply with both state and federal requirements.'") (quoting *PLIVA, Inc. v. Mensing,* 131 S.Ct. 2567, 2577 (2011)).

Defendant repeatedly asserts that its "advertisements comply with the EPA's and FTC's regulations."  Def.'s Br. at 11.  They do not.  The Energy Policy and Conversation Act (the "EPCA") requires automobile manufacturers to attach a label that contains "the fuel economy of the automobile."  49 U.S.C. § 32908(b)(1).  "Fuel economy" is defined by the EPCA as "the average number of miles traveled by an automobile for each gallon of gasoline ..., ***as determined*** by the [EPA] Administrator ***under section 32904(c) of this title***."  49 U.S.C. § 32901(11) (emphasis added).

Here, Defendant violated 49 U.S.C. § 32908(b)(1) by attributing EPA Fuel Economy Estimates to the Mini Coopers that were not compliant with the EPA's testing methods. *See* Compl. ¶¶ 3, 7-8. Despite acknowledging the "EPA *required* BMW NA to re-label" the Mini Coopers with revised EPA Fuel Economy Estimates, it deems the EPA's findings insufficient because the EPA "did not comment on the accuracy of BMW NA's original testing methods." Def.'s Br. at 2-3 (emphasis added). That too is incorrect – according to the EPA, "the 2014 BMW Mini Cooper 3-Door was found to have values that differed from those submitted to EPA at the time of certification. The Mini Cooper 3-door was found to have road-loads that exceeded EPA audit criteria when compared to the values originally reported by BMW at the time of certification."[1]

## B. Plaintiffs' Claims Are Not Preempted By The EPCA

Defendant relies on 49 U.S.C. § 32908(d) to argue that "it is well-settled that EPA fuel-economy values are merely educated estimates, and not guarantees" because "[u]nder the EPCA, a disclosure about fuel economy does not establish a warranty under state law or the laws of the United States." Def.'s Br. at 6. Defendant's reliance on 49 U.S.C. § 32908(d) is misplaced.

The EPCA provides, in pertinent part, that "[a] disclosure about ***fuel economy*** ... under this section does not establish a warranty under a law of the United States or a State." 49 U.S.C. § 32908(d) (emphasis added). Defendant fails to acknowledge that "fuel economy," as used in 49 U.S.C. § 32908(d) is defined by the EPCA as "the average number of miles traveled by an automobile for each gallon of gasoline ..., ***as determined*** by the [EPA] Administrator ***under section 32904(c) of this title***." 49 U.S.C. § 32901(11) (emphasis added). Since the EPA has found that Defendant's EPA Fuel Economy Estimates were *not* calculated in compliance with EPA regulations, *see* Compl. ¶¶ 3, 7-8, the provision is inapplicable.

---

[1] http://www.epa.gov/fueleconomy/updates.htm (last visited Jan. 7, 2015).

Since Plaintiffs allege that the EPA Fuel Economy estimates were "based on testing methods which the EPA found to be incorrect," Compl. ¶ 7, the cases cited by Defendant are inapposite as each involved challenges to the use of EPA Fuel Economy Estimates that were calculated in accordance with EPA regulations.  *Cf. Gray v. Toyota Motor Sales*, 2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ("Plaintiffs continue to acknowledge the fact that the fuel economy numbers advertised by Toyota for the Prius were calculated according to the method mandated by the EPA."); *Brett v. Toyota Motor Sales, U.S.A., Inc.*, 2008 WL 4329876 (M.D. Fla. Sept. 15, 2008) ("Plaintiff specifically states in the Complaint and in the Response that he does not challenge or impugn the EPA's testing calculations or methods."); *Paduano v. Am. Honda Motor Co.*, 169 Cal. App. 4th 1453, 1480 (2009) ("It is the combination of the EPA fuel estimates with Honda's additional assertions in its advertising materials that creates the problem of which Paduano complains."); *Sherman v. Manhattan Ford Lincoln-Mercury Inc.*, 431 N.Y.S. 2d 949, 950 (N.Y. Sup. Ct. 1980) (plaintiff alleged defendants "represented that the automobile would get 15 miles to the gallon, but ... average only seven miles per gallon.").

### C.    Plaintiffs' Claims Are Not Preempted By FTC Regulations

Relying on cases concerning a manufacturer's compliance with the *disclosure* requirements of the FTC, Defendant argues that "Plaintiffs' claims are ... preempted by FTC regulations" because "the fuel-economy language in BMW NA's advertisements complies with federal law."  Def.'s Br. at 8-9.  Defendant's focus on disclosure requirements misses the mark.

Here, Plaintiffs allege that "BMW conducted inadequate and inaccurate EPA fuel economy testing on [the Mini Coopers] resulting in vehicles whose fuel economy in MPG were less than that produced by the correct federal testing methods."  Compl. ¶ 8.  Their claims are *not* based on Defendant's mere use of the EPA Fuel Economy Estimates in its advertisements.  Nor

are their claims based on Defendant's failure to make the required disclosures in connection with its use of the EPA Fuel Economy Estimates.

Accordingly, Defendant's regulatory authorities are neither helpful nor relevant.  Since Plaintiffs do not allege that Defendant failed to include the required disclosures in either the Mini Coopers' Monroney Sticker[2] or advertisements, Defendant's reliance on two regulations requiring certain disclosures is misplaced.  *Cf.* 40 C.F.R. §600.302-12(b)(4); 16 C.F.R. § 259.2(a).  So too is Defendant's reliance on *Sanchez v. Ford Motor Co.*, 2014 WL 2218278 (D. Colo. May 29, 2014).  As Defendant notes, "[i]n *Sanchez*, because such [disclosure] language was properly included in the advertisements, the plaintiff's claims were preempted by federal law."  Def.'s Br. at 8.  Once again, Plaintiffs are not challenging Defendant's EPA Fuel Economy Estimates on the basis of inadequate disclosure.  Moreover, *Sanchez* is distinguishable on its face as it challenged an advertisement that complied with EPA and FTC regulations.  *See Sanchez*, 2014 WL 2218278, at *4 ("The advertisement complied with the regulations, and any alternative requirement that Mr. Sanchez could seek to impose would conflict with the detailed guidelines in the FTC regulations.").[3]

## II.    DEFENDANT BREACHED ITS WARRANTIES BY MISREPRESENTING THE MINI COOPERS' EPA FUEL ECONOMY ESTIMATES

### A.    Defendant's EPA Fuel Economy Advertisements Are Actionable Representations, Not Merely Estimates

Defendant asserts it "did not warrant that the Mini Cooper they bought would get 40 MPH [sic] Highway, 29 MPG City, and 33 MPG Combined."  Def.'s Br. at 14-15 (quoting

---

[2] "Monroney Sticker" means the label placed on new automobiles with the manufacturer's suggested retail price and other consumer information, including the EPA Fuel Economy Estimates.

[3] Notably, *Sanchez* was decided by the same court that previously decided *Gilles v. Ford Motor Co.*, which held that because Ford's use of the EPA Fuel Economy Estimates did not comply with FTC regulations, the plaintiff's "claims under Colorado law appear to complement rather than conflict with the EPCA and FTC regulations."  24 F. Supp. 3d 1039, 1048 (D. Colo. 2014).

Compl. ¶ 12).  Defendant is correct – it did not warrant that the Mini Coopers would actually achieve the EPA Fuel Economy Estimates in real world driving.  However, ***that is not the basis for Plaintiffs' claim***.

Rather, Defendant warranted that the EPA Fuel Economy Estimates for its Mini Coopers were calculated in accordance with all of the requirements imposed by the EPA.  Plaintiffs' allegations support this – they allege they received "a Mini Cooper of a quality different than they were promised" because they understood that the Mini Cooper they purchased in fact had an EPA Fuel Economy Estimate of 40 MPG Highway, 29 MPG City, and 33 MPG Combined. Compl. ¶¶ 12, 32.  Since the Mini Cooper does not in fact have an EPA Fuel Economy Estimate of 40 MPG Highway, 29 MPG City, and 33 MPG Combined, *id.* ¶¶ 3, 7-8, 12, 30, 32, Plaintiffs' Mini Cooper "was of a lesser quality than promised," *id.* ¶¶ 33, 43, 52.

### B.     Plaintiffs State A Claim For Each Of Their Warranty Causes Of Action

#### 1.     <u>Breach Of Express Warranty</u>

Defendant argues that "Plaintiffs' state-law claims for breach of express warranty and breach of implied warranty of merchantability fail because Plaintiffs are not in privity with BMW NA."  Def.'s Br. at 15.  Not so.

In *Karhu v. Vital Pharmaceuticals, Inc.*, Judge Cohn rejected the argument that express warranty claims in Florida require privity.  *Karhu*, 2013 WL 4047016, at *6 (S.D. Fla. Aug. 9, 2013).  First, Judge Cohn found "no facts in the pleadings that Plaintiff could expect to receive relevant scientific evidence about [the product's] ingredients from the retailer."  *Id.*  Second, Judge Cohn found that the warranties were "[c]learly directed toward the end-purchaser" because they appeared "on the packaging and in the advertisements."  *Id.*

*Karhu* is instructive.  Here, Defendant incorporated its miscalculated EPA Fuel Economy Estimates into its media advertisements, *see* Compl. ¶¶ 2, 5-6, 12, as well as in the Monroney

Stickers it affixed to each Mini Cooper sold, *see* Def.'s Br. at 5, 15.  As in *Karhu*, there are no facts to suggest Plaintiffs "could expect to receive relevant scientific evidence" about the Mini Coopers' EPA Fuel Economy Estimates from the dealer.  That is because only Defendant is responsible for performing the testing that underlies the EPA Fuel Economy Estimates.  Moreover, Plaintiffs, as the ultimate consumers, were undoubtedly the intended recipients of Defendant's express warranty.  As the *Brett* court recognized, the FTC's stated intent concerning the advertising requirements is to "provide[] consumers useful and understandable comparative fuel economy information ... [to] enable[] consumers to judge the relative fuel economy of comparative automobile models."  *Brett v. Toyota Motor Sales, U.S.A., Inc.*, 2008 WL 4329876, at *6 (M.D. Fla. Sept. 15, 2008); *Paduano v. Am. Honda Motor Co.*, 169 Cal. App. 4th 1453, 1464 (2009) (stating purpose of the statutory scheme is to "assist consumers in making comparisons of the fuel economy of new vehicles."). [4] [5]

Any doubt that Florida law does _not_ require privity for breach of express warranty claims is resolved by the *Karhu* court's observation that "several Florida cases discussing warranty claims ... have dismissed implied warranty claims against a manufacturer for lack of privity while allowing express warranty claims to go forward."  *Karhu*, 2013 WL 4047016, at *6.  Many of these cases concern warranty claims against auto manufacturers like Defendant.  *See Mesa v. BMW of North America*, 904 So.2d 450, 458 (Fla. Dist. Ct. App. 2005); *Rentas v. DaimlerChrysler Corp.*, 936 So.2d 747 (Fla. Dist. Ct. App. 2006); *Cerasani v. Am. Honda Motor Co.*, 916 So.2d 843, 846 (Fla. Dist. Ct. App. 2005).  Accordingly, Defendant's motion to dismiss

---

[4] http://www.epa.gov/fueleconomy/basicinformation.htm ("The goal of the updated label is to enable easy and well-informed comparisons across all vehicles and vehicle technologies, including electric vehicles, plug-in hybrid electric vehicles, and gasoline/diesel vehicles.") (last visited Jan. 8, 2015).

[5] Defendant's reliance on *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842 (N.D. Fla. 1995) and *Levine v. Wyeth, Inc.*, 684 F. Supp. 1338 (M.D. Fla. 2010) – which merely recites the *T.W.M.* holding – is misplaced.  *See Karhu*, 2013 WL 4047016, at *6 ("reli[ance] on *T.W.M.* for the proposition that privity is required in express warranty cases … is misplaced.").

Plaintiffs' breach of express warranty claim should be denied.  Should the Court disagree and determine privity is required, Defendant's motion should nonetheless be denied because, as explained below, *see infra* § II.B.2, Plaintiffs have established privity.

### 2.   Breach Of The Implied Warranty Of Merchantability

Defendant advances the same argument for Plaintiffs' implied warranty claim as it did for their express warranty claim, namely that it fails because Plaintiffs are not in privity with Defendant.[6]  *See* Def.'s Br. at 15.  That too is wrong.

Defendant ignores that in situations such as this Florida law permits implied warranty claims even in the absence of privity.  *See Sanchez-Knutson v. Ford Motor Co.*, --- F. Supp. 3d ---, 2014 WL 5139306, at *10 (S.D. Fla. Oct. 7, 2014) ("Plaintiff can pursue a claim of breach of implied warranty through third-party beneficiary law.  ...  Literal privity can be finessed by a proxy: direct beneficiary or third-party beneficiary status."); *Bland v. Freightliner*, 206 F. Supp. 2d 1202 (M.D. Fla. 2002) (acknowledging that privity may exist between a manufacturer of vehicle and purchaser even though vehicle was purchased from dealer); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010).

---

[6] Defendant also argues this claim fails because Plaintiffs "do not claim their vehicle fails to perform its basic purpose."  Def.'s Br. at 16 n.8.  To be merchantable under Florida law, goods must satisfy each of the six criteria set forth under Fla. Stat. § 672.314(2).  Stated otherwise, goods are merchantable only if they:

> (a) pass without objection in the trade under the contract description; ***and*** (b) in the case of fungible goods, are of fair average quality within the description; ***and*** (c) are fit for the ordinary purpose for which such goods are used; ***and*** (d) run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved; ***and*** (e) are adequately contained, packaged, and labeled as the agreement may require; ***and*** (f) conform to the promises or affirmations of fact made on the container or label if any.

Fla. Stat. § 672.314(2) (emphasis added).  Since Defendant admits that "[t]hese fuel-economy values are the same as those placed on the Vehicles' Monroney sticker," Def.'s Br. at 5, and Plaintiffs allege that Defendant miscalculated these EPA Fuel Economy Estimates, see Compl. ¶¶ 1-3, 6-8, 47, 49, Plaintiffs have adequately alleged that the Mini Coopers do not "conform to the promises or affirmations of fact made on the ... label," Fla. Stat. § 672.314(2).

Plaintiffs plead facts that, taken as true, are sufficient to sustain their breach of implied warranty claim.  Here, Defendant's EPA Fuel Economy Estimates were intended for the ultimate consumer, not Defendant's authorized dealers.  *See supra* § II.B.2.  Plaintiffs allege that they understood the dealer "was acting with the knowledge and approval of Defendant and/or as the agent of Defendant."  Compl. ¶ 12.  They further allege they understood their "purchase involved a direct transaction between themselves and Defendant, because their purchase came with Defendant's representations and warranties that the product, did, in fact, receive the stated fuel economy."  *Id.*  They also allege "Defendant knew that the Mini Coopers would be purchased and used without additional testing by Plaintiffs and Class members."  *Id.* ¶ 56.  As in *Sanchez-Knutson*, Defendant's bid to dismiss Plaintiffs' implied warranty claim should be rejected.  *See Sanchez-Knutson*, 2014 WL 5139306, at *11.

Given these factual issues, whether or not privity exits should be addressed upon a fuller factual record.  *See Zelyony v. Porsche Cars N. Am., Inc.*, 2008 WL 1776975 (S.D. Fla. Apr. 16, 2008) ("[R]uling that the parties are not in privity requires a factual inquiry the Court should not make on a motion to dismiss."); *see also Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1184 (N.D. Fla. 2007) (refusing to dismiss because "whether there was or was not privity is a factual question that cannot properly be resolved on the instant motion to dismiss.").

### 3.  <u>Magnuson-Moss Warranty Act</u>

Defendant asserts that "Plaintiffs fail to state a claim for breach of express warranty under the MMWA."  Def.'s Br. at 15.  To plead a breach of a written warranty under the Magnuson-Moss Warranty Act ("MMWA"), the plaintiff must allege: (1) the warranty concerns a "consumer product," 15 U.S.C. § 2301(1); (2) that the plaintiff is a "consumer" as defined in § 2301(3); (3) that defendants are "suppliers" or "warrantors" as defined in § 2301(4); (4) that defendants issued a "written warranty" as defined by § 2301(6); (5) that the product did not

confirm to such warranty; and (6) and the plaintiff was damaged thereby.  Plaintiffs have alleged

each element.  *See* Compl. ¶¶ 25-26 (elements 1 and 2); *id.* ¶¶ 2, 27-28, Def.'s Br. Ex. A

(Monroney Sticker) (elements 3 and 4); *id.* ¶¶ 3, 7-8, 29-30 (element 5); and *id.* ¶¶ 11, 12, 35

(element 6).  Importantly, Defendant does not contend that these allegations are insufficient to

plead a written warranty under the MMWA.

 Rather, Defendant argues that the "problem with Plaintiffs' MMWA express-warranty

claim is that BMW NA did not warrant that 'the Mini Cooper they bought would get 40 MPH

[sic] Highway, 29 MPG City, and 33 MPG Combined.'"  Def.'s Br. at 14 (quoting Compl. ¶ 12);

Def.'s Br. at 15.[7] ("An estimate is not a warranty.").  That is misleading.  As discussed above,

Defendant <u>actually</u> warranted that the EPA Fuel Economy Estimates for its Mini Coopers were

calculated in accordance with all of the requirements imposed by the EPA.  *See supra* § II.A.

## III. PLAINTIFFS STATE A CLAIM FOR EACH REMAINING CAUSE OF ACTION

### A. Plaintiffs' Fraud-Based Claims Meet The Pleading Standards Of Rule 9(b)

 Defendant argues that "Plaintiffs fail to adequately plead their claims for violation of the

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), ... for common-law fraud and

negligent misrepresentation," and for violation of the New Jersey Consumer Fraud Act

("NJCFA") because they "have not pled their fraud-based claims with sufficient particularity."

Def.'s Br. at 8, 9 n.7.  That is incorrect.

 According to Defendant, the Complaint "fails to identify *who* at BMW NA knew about

the overstated fuel estimate values; *what* he or she knew; *when* he or she knew it; and *how* he or

she knew it."  Def.'s Br. at 10 (emphasis in original).  However, that is not the right standard.  To

the contrary, Rule 9(b) is satisfied when the complaint sets forth "(1) precisely what statements

---

[7] Plaintiffs acknowledge that had Defendant calculated the EPA Fuel Economy Estimates in
compliance with the EPA regulations its estimate disclosures would insulate it from liability.
That, however, is not the case.  *See supra* § I.

were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making ... same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001).  Indeed, as Rule 9(b) makes clear, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

Here, Plaintiffs' allegations satisfy Rule 9(b) because they are sufficiently precise to allow Defendant to understand the nature of the allegations and to frame a responsive pleading. These allegations identify Defendant's misleading representations, when the misleading representations were made, and explain why they are misleading.  Plaintiffs allege they relied on Defendant's EPA Fuel Economy Estimate as a representation that the Mini Coopers' EPA Fuel Economy Estimates were determined in accordance with EPA regulations.  Compl. ¶ 12. Plaintiffs further allege that they relied on EPA Fuel Economy Estimate in deciding to purchase their Mini Cooper.  *Id.*  Moreover, Plaintiffs allege these representations were part of the basis of the bargain, in that they would not have paid as much for their Mini Cooper if they had known the truth about the EPA Fuel Economy Estimate.  *Id.*  But these representations are misleading because they were not calculated in accordance with federal law.  *Id.* ¶¶ 1-3, 7-8.

|  |  |
|---|---|
| **Who:** | The Complaint specifically identifies Defendant BMW NA as the entity that miscalculated the Mini Coopers' EPA Fuel Economy Estimates and represented those estimates in its advertising and Monroney Stickers. Compl. ¶¶ 1-3. |
| **What:** | The Complaint identifies and describes Defendant's Mini Coopers.  *Id.* ¶ 1.  Plaintiffs allege Defendant miscalculated the EPA Fuel Economy Estimates for the Mini Coopers and then misleadingly represented that these overstated EPA Fuel Economy Estimates were accurate.  *Id.* ¶¶ 1-3. |
| **When:** | Plaintiffs allege they purchased a 2014 Mini Cooper 3-door in March 2014.  *Id.* ¶ 12.  They further allege they relied on Defendant's misleadingly overstated EPA Fuel Economy Estimate in purchasing their Mini Cooper.  *Id.* |

**Where:**     Plaintiffs allege that they "purchased a 2014 Mini Cooper 3-door with a semi-automatic transmission from a Mini Cooper dealer in Fort Myers, Florida for approximately $27,000." *Id.*

**How:**       The Complaint alleges that Defendant's conduct was misleading because it miscalculated the EPA Fuel Economy Estimates for the Mini Coopers and misrepresented that figure as the Mini Coopers' actual EPA Fuel Economy Estimate. *Id.* ¶¶ 1-3, 7, 8, 9. The Complaint also alleges that Plaintiffs "are now paying higher fuel costs they would not otherwise have paid." *Id.* ¶ 11-12. The Complaint also alleges that Plaintiffs were induced to pay substantially more for their Mini Cooper based on Defendant's overstated EPA Fuel Economy Estimate. *Id.* ¶¶ 2, 12, 35, 44, 58, 67, 82, 94, 105, 114.

In sum, the allegations in the Complaint provide "all of the essential factual background that would accompany the first paragraph of any newspaper story – that is the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (citations omitted). Thus, Plaintiffs have sufficiently pled their consumer protection, fraud, and negligent misrepresentation claims with particularity.[8] *See, e.g.*, *True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175, 1183 (C.D. Cal. 2007) (finding Rule 9(b) met where Plaintiff alleged "that between March 1, 2003, and March 1, 2007 (when), Defendant advertised the HCH in print and on the Internet (how) to consumers (who) throughout the United States (where) with statements of its fuel efficiency and the prospective cost savings to the consumer that were up to 53 percent below actual figures, while omitting or softening the '[a]ctual mileage will vary' disclaimer (what).") (internal citations omitted); *Gilles v. Ford Motor Co.*, 24 F. Supp. 3d 1039, 1048-49 (D. Colo. 2014) (Rule 9(b) satisfied where plaintiff

---

[8] To the extent Defendant believes these claims require pleading intent, *see* Def.'s Br. at 9-10 n.7, Plaintiffs have done so, *see* Compl. ¶ 9. *See, e.g.*, *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 652 (D.N.J. 2013) (finding intent adequately plead where "Plaintiffs plainly accuse [defendant] of engag[ing] in a pattern and practice of *knowingly and intentionally* making numerous false representations and omissions of material facts, *with the intent to deceive* and fraudulently induce reliance by Plaintiffs and the members of the Class. Plaintiffs have sufficiently pled intent. Similarly, through the same statement, Plaintiffs pled knowing concealment since, like intent, 'knowing' can be alleged generally under Rule 9(b).").

"identified the contents of the alleged fraudulent statements by pointing to specific statements that Ford made that he relied upon."); *see also Bowen v. Wells Fargo Bank, N.A.*, 2011 WL 3627320, at *5 (M.D. Fla. Aug. 17, 2011).

### B.  Defendant Does Not Argue That Plaintiffs Failed To Adequately Plead Their Claims For Fraud And Negligent Misrepresentation

Defendant only challenges Plaintiffs' fraud and negligent misrepresentation claims on the basis that they were not plead with sufficient particularity.  For the reasons discussed above, *supra* III.A, Plaintiffs have adequately plead their fraud and negligent misrepresentation claims. *See Phelan Holdings, Inc. v. Wendy's Int'l, Inc.*, 2012 WL 3000263, at *3 (M.D. Fla. July 3, 2012) ("Because there is no dispute that Plaintiff sufficiently alleges a claim for unfair competition, Counts IV through VII should withstand a motion to dismiss.").

### C.  Plaintiffs State A Claim Under FDUTPA

Defendant contends that because its "advertisements comply with the EPA's and FTC's regulations[,] … the[] [advertisements] are not subject to the FDUTPA."[9]  Def.'s Br. at 11.

The crux of Defendant's argument is that Plaintiffs' FDUTPA claim fails because FDUTPA provides it does not apply to "[a]n act or practice required or specifically permitted by federal or state law."  Fla. Stat. § 501.212(1).  Defendant's reliance on this provision of FDUTPA is misplaced because, as already discussed above, Defendant's EPA Fuel Economy Estimates did not comply with federal law since they were calculated in a manner that deviated from that specified in EPA regulations.  *See supra* § II.A.  Thus, Defendant violated *both* the EPCA and FDUTPA.  *See Beaver v. Inkmart, LLC*, 2012 WL 3822264, at *4 (S.D. Fla. Sept. 4, 2012) ("Further, Plaintiffs allege that [Defendant's] failure to disclose certain items ... was a violation of the Federal Trade Commission Act ..., thus resulting in a per se violation of

---

[9] Defendant does not contest that Plaintiffs have alleged facts sufficient to satisfy the three elements of a FDUPTA claim.  *See Carriuolo v. Gen. Motors LLC*, 2014 WL 7011022, at *2 (S.D. Fla. Dec. 11, 2014) (reciting elements).

FDUTPA.  ...  As such, Plaintiffs have fulfilled their pleading requirements in bringing a cause of action under FDUTPA.").

Defendant's principal case – *Brett v. Toyota Motor Sales* – does not support its position. As the *Brett* court recognized, "[a] violation of FDUTPA includes any violation of any of the rules promulgated by the FTC, including the standards of unfairness and deception established by the FTC."  *Brett*, 2008 WL 4329876, at *7 (citing Fla. Stat. §§ 501.203(3)(a)-(b)).  Here, Defendant violated 49 U.S.C. § 32908(b) by affixing EPA Fuel Economy Estimates that were not calculated in accordance with the EPA's test methods to the Mini Coopers' Monroney Stickers.  Under the EPCA, Defendant's "violation of subsection (b) of [49 U.S.C. § 32908] is ... ***an unfair or deceptive act or practice*** in or affecting commerce under the Federal Trade Commission Act."  49 U.S.C. § 32908(e) (emphasis added).  As such, Defendant's violation of 49 U.S.C. § 32908(b)(1)(a) constitutes an unfair or deceptive practice, and is therefore a per se violation of FDUTPA under Fla. Stat. §§ 501.203(3)(a)-(b).

Since Defendant's advertising does *not* comply with *either* the relevant EPA or FTC regulations, *Brett* and *Godfrey* are plainly distinguishable on their facts.  *See Brett*, 2008 WL 432876 (no allegation that defendant did not comply with federal law); *Godfrey v. Toyota Motor Sales, U.S.A., Inc.*, 2008 WL 2397497 (W.D. Ark. June 11, 2008) (same).

### D.   Plaintiffs State A Claim For Unjust Enrichment

Defendant contends that Plaintiffs' claim for unjust enrichment "is simply duplicative of their other claims" and must be dismissed because "Plaintiffs do allege a contract claim for breach of express warranty."  Def.'s Br. at 10-11.  That is wrong.

As an initial matter, Plaintiffs plead unjust enrichment as an alternative theory to their other claims.  Defendant's contention that the existence of an existing remedy forecloses Plaintiffs' ability to maintain alternative claims is untenable.  Pleading in the alternative is a

well-established practice permitted under both federal and Florida law, even where the claims are inconsistent. Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *see also United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009) ("Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims.").

Defendant's argument that Plaintiffs' unjust enrichment claim fails because they have an adequate legal remedy is unavailing at this stage. As the *Karhu* court recognized, the Eleventh Circuit recently held that while "[i]t is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist ... ***that rule does not apply to unjust enrichment claims***." *Karhu*, 2013 WL 4047016, at *8 (quoting *State Farm Mutual Automobile Insurance Company v. Physicians Injury Care Center, Inc.*, 427 Fed. Appx. 714, 722 (11th Cir. 2011)) (emphasis added). Thus, dismissal is premature at this stage. *See id.* at *9.

## IV.   THE MINI COOPERS ARE VARIANTS OF THE SAME MODEL

Defendant asserts that "Plaintiffs do not have standing to pursue claims beyond those related to the actual vehicle model that they purchased." Def.'s Br. at 18. That is meritless. Defendant ignores the fact that even it treats the different Mini Coopers variants of the same model. *See id.* at 4, Ex. B (portraying the Mini Cooper and Mini Cooper S as variants of the MINI Hardtop model).

Nonetheless, Plaintiffs allege that they suffered the same injury as members of the proposed classes as a result of Defendant's uniform course of conduct. *See* Compl. ¶¶ 1, 3, 7, 8, 11. That is sufficient at the pleading stage. *See Porter v. Chrysler Group LLC*, 2013 WL 6839872, at *2 (M.D. Fla. Dec. 27, 2013) ("As the named Plaintiffs aver that their injury is the same as the proposed class members' injury, they have adequately pled that they have standing to bring this action on behalf of the purported class."); *see also Horton v. Woodman Labs, Inc.*,

2014 WL 1329355, at *2 (M.D. Fla. Apr. 2, 2014) (refusing to dismiss claims because "purported factual differences cannot be considered at this stage.  The complaint alleges that all Hero3 cameras experience the same three problems associated with the looping mode, time display, and unexpected shutdown.  These allegations are sufficient at this stage to establish Horton's standing."); *Randolph v. J.M. Smucker Co.*, 2014 WL 1018007, at *6 (S.D. Fla. Mar. 14, 2014) (rejecting argument that plaintiff lacked standing to pursue claims as to products plaintiff did not purchase because "the class certification stage is the appropriate time to address [plaintiff's] standing to assert claims relative to particular products."); *Galoski v. Stanley Black & Decker, Inc.*, 2014 WL 4064016, at *5 (N.D. Ohio Aug. 14, 2014).

Defendant's argument is also premature.  *See Horton*, 2014 WL 1329355, at *2 ("A review of relevant case law within this jurisdiction also reveals that this issue is typically assessed at the class certification stage."); *Porter*, 2013 WL 6839872, at *2 ("Plaintiffs need not prove that up now; such fact-intensive Article III standing inquiry is better suited for the class-certification stage."); *Randolph*, 2014 WL 1018007, at *6 (same).

## V.   IT IS PREMATURE TO DISMISS PLAINTIFFS' CLASS ACTION ALLEGATIONS

Defendant contends that "[i]f Plaintiffs' individual claims are not dismissed in their entirety ... their nationwide class-action allegations should be dismissed, as well as their Florida Sub-Class claims for violation of the FDUTPA, fraud, and negligent misrepresentation."  Def.'s Br. at 16 (emphasis omitted).  That argument must fail.

### A.   It Is Premature For The Court To Undertake A Choice Of Law Analysis

Defendant argues that "Plaintiffs cannot extend Florida law nationwide, nor may they pursue claims under the laws of any other state."  Def.'s Br. at 18.  That is wrong and, in any event, premature.

16

Defendant ignores that out-of-state residents have standing to bring NJCFA claims against New Jersey corporations. *See In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 69 (D.N.J. 2009) (applying NJCFA to nonresidents' consumer protection claim). Even if only one state's law could ultimately apply, Fed. R. Civ. P. 8(d) permits Plaintiffs to plead alternative claims, and applies equally to contentions regarding the applicable law. *See, e.g., Mazer*, 556 F.3d at 1273. Accordingly, Defendant's attempt to foreclose Plaintiffs from pursuing relief under the NJCFA must be rejected. *See, e.g., Karhu*, 2013 WL 4047016, at *10 (permitting plaintiff to maintain FDUTPA and New York consumer protection claim).

In any event, Defendant's choice of law analysis is insufficient. As a first step, Florida's choice of law rules require a determination of whether the competing states' laws actually conflict. *See Howard v. Kerzner Int'l Ltd.*, 2014 WL 714787, at *1 (S.D. Fla. Feb. 24, 2014). Defendant has failed to do so, presumably because there is no conflict. As such, that argument should be raised at the appropriate point. *See David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1315 n.2 (S.D. Fla. 2009) ("[A] choice-of-law analysis for all potential class plaintiffs is generally conducted at the class certification, not the motion to dismiss, stage.").

Defendant's contacts analysis is also flawed as it ignores the significance of the New Jersey contacts. First, "[a]lthough the local law of the state where the injury occurs is accorded special significance in tort cases, section 145, comment (e) states: when the primary purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance." *Guenther v. Novartis Pharm. Corp.*, 2013 WL 1225391, at *1 (M.D. Fla. Mar. 27, 2013). Additionally, Defendant's location should be given greater weight than the place of injury when the claims are based upon deceptive, uniform representations. *See Costa v. Kerzner Int'l Resorts, Inc.*, 2011 WL 2519244, at *4 (S.D. Fla. June 23, 2011) (citing *Cohen v. Implant Innovations, Inc.,* 259 F.R.D. 617, 635 (S.D. Fla. 2008)). Finally, "when the primary

purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance." *Krause v. Novartis Pharmaceuticals Corporations,* 2013 WL 785229 (N.D. Fla. Feb. 28, 2013).

In accordance with these principles, New Jersey has the most significant relationship because the injury-causing conduct occurred in New Jersey. *See Eli Research, LLC v. Must Have Info Inc.*, 2014 WL 4540110, at *8 (M.D. Fla. Sept. 11, 2014) ("As for the third factor [under the choice of law analysis], because Defendants are based in Naples, Florida, the Court finds that this fact leads to the conclusion that Defendants made the alleged representations from this location."). That conclusion is further supported by New Jersey's substantial interest in regulating its corporations. *See In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 64 ("[T]he NJCFA is designed to serve two purposes: compensating victims of consumer fraud and regulating companies within New Jersey. ... In light of the dual purpose of the NJCFA, it is clear that New Jersey has a greater interest in having its law applied to the Plaintiffs' consumer fraud claim than any other jurisdiction. ... [O]nly New Jersey has the additional interest of regulating a corporation which is headquartered – and allegedly committed the acts in question – within its borders."). Accordingly, should the Court undertake a choice of law analysis, it should find New Jersey law applicable.

## B.   It Is Premature To Determine The Suitability Of Class Treatment

Defendant attacks Plaintiffs' "fraud-based" claims on the ground of predominance, *see* Def.'s Br. at 19-20, as well as their "reliance-based" claims on the basis that they are not amenable to class wide proof, *id.* at 20. These attacks on the propriety of class certification are premature at the motion to dismiss stage. *See Carriuolo*, 2014 WL 7011022, at *5 ("The question of class certification is generally not addressed on a motion to dismiss."); *Sanchez-Knutson*, 2014 WL 5139306, at *15 ("While the Complaint ... states 'Class Action Complaint,'

any arguments about whether this case can be properly maintained as a class action are premature at this stage in the litigation.  No responsive pleadings have been filed.  No discovery has occurred.").  That is especially true where, as here, plaintiffs have not filed a motion for class certification.  *See, e.g.*, *Desir v. Greenspoon Marder, P.A.*, 2014 WL 2767230, at \*2 (S.D. Fla. June 19, 2014) ("To the extent that Defendant's Motion seeks the Court to deny a not yet filed motion for class certification, such request is DENIED as premature at this stage of the litigation.").

Moreover, "[d]ismissal at this stage is an extreme remedy appropriate only where a defendant demonstrates from the face of the complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Wagner v. CLC Resorts & Developments, Inc.*, 2014 WL 3809130, at \*4 (M.D. Fla. Aug. 1, 2014) (refusing to strike class allegations because "Defendants' arguments are better suited as challenges to a motion for class certification, rather than as a basis for a motion to dismiss."). Defendant has not made such a showing.

With respect to FDUTPA, these claims do not require individualized proof of reliance and are routinely certified.  *See Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 Fed. Appx. 565, 567 (11th Cir. 2009) ("[T]he FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct.  But the plaintiff must prove that the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances."); *see also Davis v. Powertel, Inc.*, 776 So.2d 971, 973 (Fla. 1st DCA 2000).  Defendant's reliance on *Berenhuer v. Warner-Lambert Co.*, 2003 WL 23299241 (Fla. 13th Cir. Ct. July 31, 2003), is misplaced since the court ruled that plaintiffs' FDUTPA claim failed because the plaintiffs "d[id] not allege that they saw any of the challenged advertisements of Warner-Lambert or Pfizer."  *Berenguer*, 2003 WL 24299241, at \*2.  That is not the case here.  *See, e.g.*, Compl. ¶ 12.

With respect to Defendant's argument concerning common law fraud and negligent misrepresentation, *see* Def.'s Br. at 20, both claims are capable of being decided on a classwide basis. *See Miles v. Am. Online, Inc.*, 202 F.R.D. 297 (M.D. Fla. 2001); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014); *Schojan v. Papa Johns Int'l, Inc.*, 2014 WL 7178102, at *7-8 (M.D. Fla. Dec. 16, 2014). As the Eleventh Circuit has recognized, "*based on the nature of the misrepresentations at issue, the circumstantial evidence that can be used to show reliance is common to the whole class.* ... Consequently, while each plaintiff must prove reliance, he or she may do so through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004) (finding common issues predominated) (emphasis added).

Defendant's remaining arguments, *see* Def.'s Br. at 19-20, are also unavailing. *See, e.g.*, *Randolph*, 2014 WL 7330430, at *10 ("Because a plaintiff need not demonstrate actual reliance in order to prove causation [under FDUTPA], Defendant's argument is unfounded. The fact that some consumers may have purchased Crisco oils for reasons other than the 'All Natural' labeling does not preclude certification."); *Stalley v. ADS Alliance Data Sys., Inc.*, 2013 WL 72411, at *3 (M.D. Fla. Jan. 7, 2013) (since attacks on class definition "d[o] not directly go to the sufficiency of the allegations in the second amended complaint, but rather, are directed to the definition and scope of the putative class, the Court finds that these arguments are best addressed in ruling on Plaintiffs' motion to certify class when the Court has the luxury of considering evidence beyond the four corners of the complaint.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that Defendant's Motion to Dismiss be denied in its entirety, or in the alternative, that the Court grant leave to amend to cure any deficiencies.

Dated:  January 12, 2015

Respectfully submitted,

**BURSOR & FISHER, P.A.**


By:      */s/ Scott A. Bursor*
             Scott A. Bursor

Scott A. Bursor (State Bar No. 68362)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com

*Counsel for Plaintiffs*