# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Fort Meyers Division

KAREN JARVIS and MICHAEL JARVIS, on
behalf of themselves and all others similarly
situated,

     Plaintiffs,

  v.

BMW OF NORTH AMERICA, LLC,

     Defendant.

Civil Action No. 14-cv-654-JES-CM

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND <u>APPOINTMENT OF CLASS COUNSEL</u>

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF COMMON FACTS ................................................................. 1

III.    THE LEGAL STANDARD FOR CLASS CERTIFICATION ........................... 2

IV.     THE CLASS IS ADEQUATELY DEFINED AND CLEARLY
        ASCERTAINABLE ............................................................................................ 2

V.      THE REQUIREMENTS OF RULE 23(A) ARE READILY MET ..................... 3

        A.      Numerosity Is Satisfied .......................................................................... 3

        B.      Commonality Is Satisfied ........................................................................ 4

        C.      Plaintiffs' Claims Are Typical ................................................................ 5

        D.      Plaintiffs Will Adequately Represent The Class And Florida
                Subclass ................................................................................................... 6

VI.     THE PROPOSED CLASS SATISFIES RULE 23(B)(3) ................................... 8

        A.      Common Questions Of Law Or Fact Predominate .................................. 8

                1.      The Elements Of The Florida And New Jersey Consumer
                        Protection Claims Can Be Established Through Common
                        Proofs ........................................................................................... 8

                2.      The Elements Of The Warranty Claims Can Be Established
                        Through Common Proofs ............................................................ 11

                3.      The Elements Of Unjust Enrichment Can Be Established
                        Through Common Proofs ............................................................ 13

                4.      The Elements Of Fraud And Negligent Misrepresentation
                        Can Be Established Through Common Proofs ............................ 14

                5.      Damages Can Be Calculated On A Classwide Basis .................. 15

        B.      Class Litigation Is Superior To Other Methods Of Adjudication ........... 18

VII.    PLAINTIFFS' PRELIMINARY PROPOSED NOTICE PLAN ........................ 19

VIII.   CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
　133 S. Ct. 1184 (2013) ................................................................. 8

*Bentley v. Volkswagen Grp. of Am., Inc.*,
　2013 WL 5927974 (M.D. Fla. Nov. 5, 2013) ...................... 15

*Bosland v. Warnock Dodge, Inc.*,
　197 N.J. 543 (2009) .................................................................. 10

*Boyd v. Homes of Legend, Inc.*,
　188 F.3d 1294 (11th Cir. 1999) ............................................ 15

*Bussey v. Macon Cnty. Greyhound Park, Inc.*,
　562 Fed. Appx. 782 (11th Cir. 2014) .................................... 2

*Cheney v. Cyberguard Corp.*,
　213 F.R.D. 484 (S.D. Fla. 2003) ............................................ 4

*Collins v. DaimlerChrysler Corp.*,
　894 So.2d 988 (Fla. 5th Dist. Ct. App. 2004) ...................... 15

*County of Monroe v. Priceline.com, Inc.*,
　265 F.R.D. 659 (S.D. Fla. 2010) .......................................... 13

*Cox v. Am. Cast Iron Pipe Co.*,
　784 F.2d 1546 (11th Cir. 1986) .............................................. 4

*CV Reit, Inc. v. Levy*,
　144 F.R.D. 690 (S.D. Fla. 1992) ............................................ 5

*Davis v. Powertel*,
　776 So.3d 971 (Fla. Dist. Ct. App. 2000) .............................. 9

*Ebin v. Kangadis Food Inc.*,
　297 F.R.D. 561 (S.D.N.Y. 2014) .......................................... 14

*Egbebike v. Wal-Mart Stores E., LP*,
　2014 WL 3053184 (M.D. Fla. July 7, 2014) ................. 12, 13

*Elias v. Unger Food Products, Inc.*,
　252 F.R.D. 233 (D.N.J. 2008) .............................................. 10

*General Telephone Co. of Southwest v. Falcon*,
　457 U.S. 147 (1982) .................................................................. 5

*Gennari v. Weichert Cop. Realtors*,
　148 N.J. 582 (1997) .................................................................. 10

*Griffin v. Dugger*,
　823 F.2d 1476 (11th Cir. 1987) .............................................. 5

*Heaven v. Trust Co. Bank,*
  118 F.3d 735 (11th Cir. 1997) ................................................................................. 2

*In re Checking Account Overdraft Litig.,*
  286 F.R.D. 645 (S.D. Fla. 2012) ............................................................................ 14

*In re Emulex Corp.,*
  210 F.R.D. 717 (C.D. Cal. 2002) ............................................................................ 7

*In re Hyundai and Kia Fuel Economy Litig.,*
  No. 13-ml-2424-GW-FFM (C.D. Cal. June 26, 2014) .................................. passim

*Jovine v. Abbott Laboratories, Inc.,*
  795 F. Supp. 2d 1331 (S.D. Fla. 2011) ................................................................. 13

*Klay v. Humana, Inc.,*
  382 F.3d 1241 (11th Cir. 2004) ...................................................................... 15, 18

*Kornberg v. Carnival Cruise Lines, Inc.,*
  741 F.2d 1332 (11th Cir. 1984) ............................................................................. 5

*Latman v. Costa Cruise Lines, N.V.,*
  758 So.2d 699 (Fla. Dist. Ct. App. 2000) ............................................................. 9

*Lee v. Carter-Reed Co., L.L.C.,*
  203 N.J. 496 (2010) ............................................................................................. 10

*Little v. T–Mobile USA, Inc.,*
  691 F.3d 1302 (11th Cir. 2012) ............................................................................. 2

*Miles v. Am. Online, Inc.,*
  202 F.R.D. 297 (M.D. Fla. 2001) .................................................................... 4, 14

*Muzuco v. Re$ubmitit, LLC,*
  2013 WL 4566305 (S.D. Fla. Aug. 28, 2013) ...................................................... 14

*Nelson v. Meade Johnson Nutrition Co.,*
  270 F.R.D. 689 (S.D. Fla. 2010) ........................................................................... 9

*Nikolin v. Samsung Electronics Am., Inc.,*
  2010 WL 4116997 (D.N.J. Oct. 18, 2010) ........................................................... 17

*Rosen v. J.M. Auto Inc.,*
  270 F.R.D. 675 (S.D. Fla. 2009) .................................................................... 12, 15

*Schojan v. Papa Johns Int'l, Inc.,*
  2014 WL 7178102 (M.D. Fla. Dec. 16, 2014) ..................................................... 14

*Smajlaj v. Campbell Soup Co.,*
  782 F. Supp. 2d 84 (D.N.J. 2011) ....................................................................... 15

*Smith v. Wm. Wrigley Jr. Co.,*
  2010 WL 2401149 (S.D. Fla. June 15, 2010) ..................................... 5, 6, 9, 11, 12

*Valley Drug Co. v. Geneva Pharms., Inc.*,
    350 F.3d 1181 (11th Cir. 2003) ............................................................................ 7

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ................................................................... 4, 8, 13

*Williams v. Mohawk Indus., Inc.*,
    568 F.3d 1350 (11th Cir. 2009) ............................................................................ 4

**Statutes**
Fla. Stat. § 501.204(1) ............................................................................................... 9

Fla. Stat. § 672.314 ................................................................................................. 12

Fla. Stat. § 672.314(2)(f) ........................................................................................ 13

Fla. Stat. § 672.714(2) ............................................................................................ 15

N.J.S.A. § 56:8-19 ................................................................................................... 17

**Rules**
Fed. R. Civ. P. 23(a)(1) ............................................................................................. 3

Fed. R. Civ. P. 23(a)(2) ............................................................................................. 4

Fed. R. Civ. P. 23(a)(3) ............................................................................................. 5

Fed. R. Civ. P. 23(a)(4) ............................................................................................. 6

Fed. R. Civ. P. 23(g) ................................................................................................. 7

Fed. R. Civ. P. 23(g)(1)(A) ....................................................................................... 7

Fed. R. Civ. P." L.R. 4.04(b) ................................................................................... 19

## I.     INTRODUCTION

Plaintiffs move pursuant to Fed. R. Civ. P. 23(b)(3) and Local Rule 4.04(b) for certification of a class defined as "all persons in the United States who purchased, financed, or leased a Mini Cooper[1] before October 22, 2014" (the "Class") and a subclass of "all Class members who purchased, financed, or leased a Mini Cooper in Florida" (the "Florida Subclass"). Excluded from the Class and Florida Subclass are persons who purchased, financed, or leased a Mini Cooper for the purpose of resale.  As shown below, Plaintiffs have met each requirement of Rule 23(a) and Rule 23(b)(3).

## II.    SUMMARY OF COMMON FACTS

The very purpose of the EPA Fuel Economy Estimates is to "provide consumers with the most accurate, reliable and repeatable fuel economy values."   Compl. ¶ 3 Ex. A (EPA Press Release).

Defendant BMW of North America, LLC ("Defendant" or "BMW") attributed fuel economy estimates (the "EPA Fuel Economy Estimates") to its line of Mini Coopers which were not calculated in accordance with the standards set forth by the United States Environmental Protection Agency (the "EPA").  As a result, Defendant overstated the actual values of the initial EPA Fuel Economy Estimates for each of the affected Mini Coopers in every category – highway, city, and combined.  *See* Compl. ¶ 3.  This is confirmed by independent testing administered by the EPA, which, based on its testing, required Defendant to restate the EPA Fuel Economy Estimates for the Mini Coopers.  *See id.* ¶¶ 3, 7, 8.

Plaintiffs purchased a Mini Cooper for approximately $27,000 in reliance on the EPA Fuel Economy Estimates as advertised in Defendant's promotional materials.  *See id.* ¶ 12.  Prior

---

[1] "Mini Cooper" includes all 2014 Mini Cooper and Mini Cooper S 3-door automobiles (also known as the "Hardtop 2 Door") with both semi-automatic and manual transmission.

to their purchase, Plaintiffs relied "on the representations that the Mini Cooper they bought

would get 40 MPG Highway, 29 MPG City, and 32 MPG Combined" pursuant to EPA testing.

*Id.* As a result of the overstated EPA Fuel Economy Estimates, "Plaintiffs paid a higher price for

the Mini Cooper than they would have paid if accurate fuel economy in MPG had been revealed,

and Plaintiffs are incurring higher fuel costs than they otherwise would have" because "the Mini

Cooper [was] of a different quality than they were promised." *Id.*

## III.   THE LEGAL STANDARD FOR CLASS CERTIFICATION

A threshold requirement to certification is that "the plaintiff must demonstrate that the

proposed class is adequately defined and clearly ascertainable." *Little v. T–Mobile USA, Inc.*,

691 F.3d 1302, 1304 (11th Cir. 2012) (internal quotation omitted).  Additionally, Plaintiffs must

establish the criteria set out in Rule 23(a), and at least one of the subsections of Rule 23(b).

*Heaven v. Trust Co. Bank,* 118 F.3d 735, 737 (11th Cir. 1997).  This case is ideally suited for

class treatment.  It meets the threshold prerequisite, as well as all of the requirements of Rule

23(a) and 23(b)(3).  Certification is therefore appropriate.

## IV.   THE CLASS IS ADEQUATELY DEFINED AND CLEARLY ASCERTAINABLE

Plaintiffs move pursuant to Fed. R. Civ. P. 23(b)(3) for certification of a class defined as

"all persons in the United States who purchased, financed, or leased a Mini Cooper before

October 22, 2014" (the "Class") and a subclass of "all Class members who purchased, financed,

or leased a Mini Cooper in Florida" (the "Florida Subclass").  Excluded from the Class and

Florida Subclass are persons who purchased, financed, or leased a Mini Cooper for the purpose

of resale.

An ascertainable and "identifiable class exists if its members can be ascertained by

reference to objective criteria." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 Fed. Appx.

782, 787 (11th Cir. 2014) (citation omitted).  These "objective criteria" should be

"administratively feasible," meaning that the identification of class members should be "a manageable process that does not require much, if any, individual inquiries." *Id*.

Here, the Class is clearly and readily ascertainable as there is nothing subjective about either class definition. An individual either purchased or leased a Mini Cooper prior to October 22, 2014, or not. The location of the transaction is an objective fact that can be determined by reference to Defendant's records or those of its agents, which Defendant has already shown to exist. *See, e.g.*, Dkt. No. 14-3 (attaching as an exhibit to its motion to dismiss a corrected Monroney Sticker with the vehicle identification number of Plaintiffs' Mini Cooper). It is administratively feasible to identify class members by reference to these criteria. *See In re Hyundai and Kia Fuel Economy Litig.*, No. 13-ml-2424-GW-FFM, Dkt. No. 267 at 7 (C.D. Cal. June 26, 2014) (finding class owners and lessees of vehicles with overstated EPA Fuel Economy Estimates to be "readily ascertainable" because "[t]here are clear, objective criteria that any individual can use to determine whether they are a class member: *e.g.* the model and year of the vehicle, whether they owned or leased the vehicle, when they purchased or leased the vehicle, and where the vehicle was registered."). Moreover, Class members can also be identified via the R.L. Polk Registration data or other ownership documents. *See id.* at 15-16 ("Notice will be provided by first-class mail, sent to every Class Member whose current address is reasonable ascertained from an available R.L. Polk & Co. database.").

## V.     THE REQUIREMENTS OF RULE 23(a) ARE READILY MET

Rule 23(a) sets forth four prerequisites for certification: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1).

### A.     Numerosity Is Satisfied

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Eleventh Circuit has held that

"[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).  This case easily satisfies the numerosity requirement since, according to its press release, Defendant sold 15,799 Mini Coopers between January and October 2014.[2]

> **B.**     **Commonality Is Satisfied**

Commonality is met "if there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement is a "relatively light burden" that "does not require that all the questions of law and fact raised by the dispute be common ... or that the common questions of law or fact predominate over individual issues." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (internal quotations omitted).  Rather, it requires only "that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotations omitted).

Here, the commonality requirement is satisfied by the common questions of whether the testing used to calculate EPA Fuel Economy Estimates for the Mini Coopers complied with EPA requirements and whether the resulting EPA Fuel Economy Estimates were accurate.  *See In re Hyundai and Kia Fuel Economy Litig.*, No. 13-ml-2424-GW-FFM, Dkt. No. 267 at 7 (C.D. Cal. June 26, 2014) (finding commonality satisfied by "the common questions of whether the Class Vehicles received proper fuel economy testing and whether the resulting EPA fuel economy ratings were accurate.  ...  This single issue of fact is significant to the claims of all Class Members, and therefore the commonality requirement is satisfied."); *see also Miles v. Am.*

---

[2] *See* https://www.press.bmwgroup.com/usa/pressDetail.html?title=bmw-group-u-s-reports-october-2014-sales&outputChannelId=9&id=T0195716EN_US&left_menu_item=node__804#attachments (last visited Feb. 5, 2015).

*Online, Inc.*, 202 F.R.D. 297, 303 (M.D. Fla. 2001) ("Plaintiffs have met the second requirement

of identifying common questions of law and fact among Plaintiffs and putative class members by

alleging that AOL's advertising and marketing plan for its internet access service, the access to

the user's computer and the 'uniform disclosure' regarding phone charges is unfair, deceptive or

fraudulent and causes damages to Plaintiffs and their computers.  Thus, the alleged conduct

arises from the same conduct by AOL.  Whether AOL's conduct is fraudulent and/or violates the

CFAA and/or the unfair and deceptive trade practice statutes involves common questions of fact

and law, using the same legal theories and defenses."); *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL

2401149, at *4 (S.D. Fla. June 15, 2010) (finding commonality where "allegations of

wrongdoing … involve standardized product packages containing a uniform … message")

[hereinafter, "*Wrigley*"].  Other common questions would include, among others, whether the

overstated EPA Fuel Economy Estimates would deceive an objective consumer acting

reasonably in the circumstances, and a determination of the proper measure of Plaintiffs' and

Class members' damages.

### C.     Plaintiffs' Claims Are Typical

Rule 23(a)(3) requires Plaintiff's claims to be "typical" of the class.  Fed. R. Civ. P.

23(a)(3).  Typicality is satisfied where the named plaintiff's claims "arise from the same event or

pattern or practice and are based on the same legal theory" as the claims of the class.  *Kornberg

v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984), cert. denied, 470 U.S. 1004

(1985); *see also CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992).  As the Supreme

Court has noted, the "commonality and typicality requirements of Rule 23(a) tend to merge."

*See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *see also

Griffin v. Dugger*, 823 F.2d 1476, 1489 n.31 (11th Cir. 1987).

Here, Plaintiffs' and other Class members' claims are based on the miscalculation and misrepresentation of the EPA Fuel Economy Estimates for the Mini Coopers.  The claims thus arise out of the same course of conduct by Defendant and are based on the same legal theories. Plaintiffs and all Class members were exposed to the same uniform misrepresentation of the Mini Coopers' EPA Fuel Economy Estimates.  As a result, Plaintiffs and Class members have suffered the same economic injury – the loss of money paid in additional fuel costs to operate the Mini Coopers than would have been paid if the Mini Coopers had the EPA Fuel Economy Estimates promised by Defendant.[3]  Plaintiffs' claims are therefore typical of the Class and Florida Subclass.  *See In re Hyundai and Kia Fuel Economy Litig.*, No. 13-ml-2424-GW-FFM, Dkt. No. 267 at 8 (C.D. Cal. June 26, 2014) (finding typicality satisfied where "Plaintiffs allege[d] that all Class Vehicles were given inaccurate fuel economy ratings based on irregularities in the process used for testing fuel economy.  Differences in the magnitude of the fuel economy inaccuracies between Class Vehicles do not alter the conclusion that all Class Members suffered a similar injury based on the same course of conduct."); *see also Wrigley*, 2010 WL 2401149, at *4 ("Again, because the Plaintiff and class members were exposed to uniform misrepresentations, the Court finds that the typicality requirement is satisfied.").

**D.    Plaintiffs Will Adequately Represent The Class And Florida Subclass**

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "This 'adequacy of representation' analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."  *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir.

---

[3] Plaintiffs' complaint makes no claim for personal injury on behalf of Plaintiffs or any class member.  The only injuries at issue in this case are economic losses based on payment of the purchase price for Mini Coopers with overstated EPA Fuel Economy Estimates.

2003) (citation omitted).  Both of these factors are met here.  Neither Plaintiffs nor their counsel have any interest antagonistic to absent Class members.

Plaintiffs, like each absent Class member, have a strong interest in proving Defendant's common course of conduct, establishing its unlawfulness, demonstrating the impact of the unlawful conduct, and obtaining redress.  Plaintiffs provided input of their relevant experiences related to their Mini Cooper, and reviewed and authorized the filing of the Complaint.  Moreover, Plaintiffs have retained counsel competent and experienced in complex class action litigation, who are committed to vigorously prosecuting this action, and who have already committed significant resources to this litigation and have demonstrated that they will continue to do so.  Accordingly, Plaintiffs are adequate Class representatives because they have no interests antagonistic to the interests of absent Class members and there are no material conflicts between Plaintiffs' interests in this litigation and those of the Class members that would make class certification inappropriate.

With respect to Plaintiffs' counsel, Rule 23(g) requires that a district court appoint class counsel for any class that is certified.  *See* Fed. R. Civ. P. 23(g)(1)(A).  In appointing class counsel, Rule 23(g) lists four factors for consideration:  (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions or other complex litigation and the type of claims in the litigation; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g).  In evaluating the adequacy of counsel, "a court may examine the attorneys' professional qualifications, skill, experience, and resources.  The court may also look at the attorneys' demonstrated performance in the suit itself."  *In re Emulex Corp.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002).

Plaintiffs' counsel, Bursor & Fisher, P.A., are class action lawyers who have experience

litigating consumer claims.  *See* Bursor & Fisher, P.A. Firm Resume, Bursor Decl. Ex. A.  The

firm has been appointed class counsel in dozens of cases in both federal and state courts, and has

won multi-million verdicts or recoveries in 5 of 5 class action jury trials since 2008.  *Id.*  They

have also been vigorously prosecuting this action through litigation of Defendant's motion to

dismiss, have begun retaining experts, conducted substantial research regarding the legal issues,

and thoroughly investigated the factual issues in this action.  They have no conflicts of interest

and will prosecute this action vigorously on behalf of Plaintiffs and the Class.  These facts

demonstrate that Bursor & Fisher, P.A. is qualified to serve as class counsel.

## VI.     THE PROPOSED CLASS SATISFIES RULE 23(b)(3)

Rule 23(b)(3) authorizes class certification where "questions of law or fact common to

class members predominate over any questions affecting only individual members," and "a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Fed. R. Civ. P. 23(b)(3).  Both are met here.

### A.     Common Questions Of Law Or Fact Predominate

Common issues can predominate only if they have a "direct impact on every class

member's effort to establish liability that is more substantial than the impact of individual issues

in resolving the claim or claims of each class member."  *Vega v. T-Mobile USA, Inc.,* 564 F.3d

1256, 1270 (11th Cir. 2009).  Notably, Rule 23(b)(3) calls only for "a showing that questions

common to the class predominate, not that those questions will be answered, on the merits, in

favor of the class."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191

(2013).  Here, the legal and factual issues do not require individualized determinations, but can

be resolved through generalized proof applicable to each of Plaintiffs' claims.

### 1.     The Elements Of The Florida And New Jersey Consumer Protection Claims Can Be Established Through Common Proofs

Plaintiffs allege violations of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.* (the "NJCFA") on behalf of a nationwide class.  Compl. ¶ 87.  Plaintiffs also allege violations of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") on behalf of a Subclass of all Class members who purchased Mini Coopers in Florida.  Compl. ¶ 70.  These claims involve common questions that predominate over any individual issues that may arise.

FDUTPA provides a cause of action "against a party who has engaged in 'unfair or deceptive acts or practices in the conduct of any trade or commerce."  *Davis v. Powertel*, 776 So.3d 971, 974 (Fla. Dist. Ct. App. 2000) (citing Fla. Stat. § 501.204(1)).  FDUTPA "does not require subjective evidence of reliance, as would be the case with a common law action for fraud."  *Id.*  "It is sufficient if a reasonable person would have relied on the representations."  *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699, 704 (Fla. Dist. Ct. App. 2000).  This claim is subject to common proof.  *See Nelson v. Meade Johnson Nutrition Co.*, 270 F.R.D. 689, 697 (S.D. Fla. 2010) (finding FDUTPA is subject to common proof, stating: "class members … need not submit individualized proof to establish causation [under FDUTPA].")[4]; *Wrigley*, 2010 WL 2401149, at *5 (finding predominance for FDUTPA claim in case over misrepresentations on packaging of chewing gum); *Davis*, 776 So.2d at 975 ("Because proof of reliance is unnecessary, the plaintiffs' inability to show reliance in every case cannot be used to justify a finding that individual issues will predominate over the class claims."); *Latman*, 758 So.2d at 699 (finding class in FDUTPA action should be certified).

Elements of the NJCFA are also subject to common proof.  Under the NJCFA, plaintiffs must establish "1) unlawful conduct by defendant[s]; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss."  *Bosland v.*

---

[4] The Court also noted in *Meade Johnson* that "individualized damages determinations generally do not preclude class certification if liability may be determined class-wide."  *Meade Johnson*, 270 F.R.D. at 697.

*Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009).  Importantly, "causation under the [NJ]CFA is not the equivalent of reliance."  *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 577 (2010).  The NJCFA "does not require proof of reliance."  *Gennari v. Weichert Cop. Realtors*, 148 N.J. 582, 590 (1997).  This claim is subject to common proof.  *See Carter-Reed Co.,* 203 N.J. at 527-28 ("When all the representations about the product are baseless, a trier of fact may infer the causal relationship …. [T]he [NJ]CFA does not require proof of reliance, but only a causal connection between the unlawful practice and ascertainable loss.") (internal quotations omitted); *Elias v. Unger Food Products, Inc.*, 252 F.R.D. 233, 249 (D.N.J. 2008) ("Where representations are in written and uniform materials presented to each prospective plaintiff, there is a presumption of causation in NJCFA cases.").

Here, every class member saw the same miscalculated and overstated EPA Fuel Economy Estimates as they were included not only on the Monroney Sticker for every Mini Cooper sold, but also in Defendant's nationwide advertisements, including its advertising brochures and website.  *See* Dkt. No. 14-3 (Monroney Sticker); *see also* Compl. ¶ 5 (Defendant's website); *id.* ¶ 6 (other marketing materials); *id.* ¶ 12 ("Plaintiffs saw BMW's overstated MPG for the model they purchased in Defendant's marketing materials, including on Defendant's website and in Defendant's brochure for the Mini Cooper.").  Whether these representations are true or false turns entirely on generalized evidence that is common to all class members.  *See In re Hyundai and Kia Fuel Economy Litig.*, No. 13-ml-2424-GW-FFM, Dkt. No. 267 at 11 (C.D. Cal. June 26, 2014) ("Whether the fuel economy statements were in fact inaccurate can be shown on a classwide basis.  Further, whether Defendants knew that their fuel economy statements were false or misleading may be ascertained on a classwide basis.  Because the primary issues in proving all of these causes of action involve inquiries as to whether and why these misrepresentations were made, and because such misrepresentations were uniformly made to all

10

consumers by virtue of the Monroney stickers and nationwide advertising, the predominance requirement is likely satisfied."). The falsity of the EPA Fuel Economy Estimates has already been determined by the EPA. *See* Compl. ¶ 3 Ex. A (EPA Press Release) ("The EPA performed a fuel economy audit on the BMW Mini Cooper and obtained values that differed from those BMW submitted to EPA for certification. ... As a result of this subsequent testing, EPA is *requiring BMW to relabel* four of its 2014 Mini Cooper models with lower fuel economy values."); *see also* EPA Fuel Economy Labels: Updates ("EPA conducted road-load audits of Mini vehicles produced by BMW in the 2014 model year. The Mini Cooper 3-door was found to have road-loads (i.e., aerodynamic drag, tire rolling resistance, and driveline friction) which exceeded EPA audit criteria when compared to the values originally reported by BMW at the time of certification."). [5] Generalized evidence, such as expert testimony, will also establish that EPA Fuel Economy Estimates were likely to mislead a reasonable consumer acting reasonably under the circumstances, especially in light of the fact that the very purpose of the EPA Fuel Economy Estimates, which is to "provide consumers with the most accurate, reliable and repeatable fuel economy values." Compl. ¶ 3 Ex. A (EPA Press Release).

> ### 2. The Elements Of The Warranty Claims Can Be Established Through Common Proofs

Plaintiffs allege breach of express warranty, breach of implied warranty of merchantability, and violations of the Magnuson-Moss Warranty Act (the "MMWA"). These allegations also involve common questions that predominate over any individual issues that may arise. For example, in *Wrigley*, this Court found that common questions predominated over individualized issues where the plaintiff asserted a claim for breach of express warranty over uniform misrepresentations that appeared on the packaging of chewing gum, stating that "all of

---

[5] *See* EPA Fuel Economy Labels: Updates, *available at* http://www.epa.gov/fueleconomy/updates.htm (last visited Feb. 5, 2015).

the claims of the named Plaintiff and the Proposed Class are based on the same legal theories and the same uniform advertising." 2010 WL 2401149, at *5. Other Florida federal courts have likewise found breach of express warranty to be a claim that is subject to common proof. *See, e.g., Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 681 (S.D. Fla. 2009) (finding predominance requirement satisfied where claims were based on "specific, and common, representations," and did not "differ[] in any material respect … with regard to different purchasers"). Here, Defendant warranted that the Mini Coopers received a certain EPA Fuel Economy Estimate in its advertising materials, including in its brochures, website, and Monroney Sticker. The central question, again, is whether those EPA Fuel Economy Estimates were overstated. Whether these representations are true or false turns entirely on generalized evidence that is common to all class members. *See, e.g, In re Hyundai and Kia Fuel Economy Litig.*, No. 13-ml-2424-GW-FFM, Dkt. No. 267 at 11 (C.D. Cal. June 26, 2014).

Common issues also predominate over the claim for breach of the implied warranty of merchantability. "A warranty that 'goods shall be merchantable' – i.e., 'fit for the ordinary purposes for which such goods are used' – is implied in any contract for the sale of goods if the seller is a merchant with respect to goods of that kind." *Egbebike v. Wal-Mart Stores E., LP*, 2014 WL 3053184, at *6 (M.D. Fla. July 7, 2014) (quoting Fla. Stat. § 672.314). To be merchantable under Florida law, goods must satisfy each of the six criteria set forth under Fla. Stat. § 672.314(2).[6] "To sustain a claim for breach of implied warranty under Florida law, a plaintiff must allege that: '(1) the plaintiff was a foreseeable user of the product, (2) the product

---

[6] "Goods to be merchantable must be at least such as: (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purpose for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any." Fla. Stat. § 672.314(2).

was used in the intended manner at the time of the injury, (3) the product was defective when transferred from the warrantor, and (4) the defect caused the injury.'" *Egbebike v. Wal-Mart Stores E., LP*, 2014 WL 3053184, at *6 (M.D. Fla. July 7, 2014) (quoting *Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011)). Here, the central question is whether the EPA Fuel Economy Estimates "conform to the promises or affirmations of fact made" in Defendant's advertising materials, including its brochures, website, and Monroney Stickers. Fla. Stat. § 672.314(2)(f). Once again, the same generalized evidence will determine that question with respect to all class members.

### 3.     The Elements Of Unjust Enrichment Can Be Established Through Common Proofs

The predominance requirement is also met for Plaintiffs' claim for unjust enrichment. The elements of an unjust enrichment claim are (1) the plaintiffs have conferred a benefit on the defendant, (2) the defendant has knowledge of the benefit, (3) the defendant has accepted or retained the benefit conferred, and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 668 n.8 (S.D. Fla. 2010). The Eleventh Circuit has stated that unjust enrichment claims are usually unsuitable for class-wide resolution. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009). But as Judge Moore pointed out when he certified the unjust enrichment claim in *Priceline*:

> "[T]he Eleventh Circuit's underlying concern is that unjust enrichment claims typically require individualized inquiries into the equities of each class member's interaction with each defendant. This concern, however, is not present here. As discussed above, it is undisputed that Defendants' business operations are the same as to all members of the putative class. Given this fact, it is difficult to conceive of any significant equitable differences between class members …."

*Priceline.com*, 265 F.R.D. at 671. Following Judge Moore's lead, Judge Scola and Judge King have also recently granted motions for class certification on unjust enrichment claims. *See*

*Muzuco v. Re$ubmitit,* LLC, 2013 WL 4566305 at *14 (S.D. Fla. Aug. 28, 2013) ("Where, as here, highly individualized issues are absent, class certification for an unjust enrichment claim is appropriate"); *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 657 (S.D. Fla. 2012) ("Unjust enrichment claims can be certified for class treatment where there are common circumstances bearing on whether the defendant's retention of a benefit received from class members was just or not").  Here, as in *Muzuco* and *In re Checking Account Overdraft Litig.*, there are no highly individualized issues as the central question is whether the EPA Fuel Economy Estimates were overstated.  Since Plaintiffs and Class members all purchased, financed, or leased Mini Coopers containing EPA Fuel Economy Estimates, the same common evidence discussed above will determine that question with respect to all Class members.

### 4.     The Elements Of Fraud And Negligent Misrepresentation Can Be Established Through Common Proofs

Predominance is also met for the nationwide Class for Plaintiffs' claims for fraud and negligent misrepresentation since both claims are capable of being decided on a classwide basis. *See Miles v. Am. Online, Inc.*, 202 F.R.D. 297 (M.D. Fla. 2001) (certifying fraud claim because Rule 23's "Advisory Notes also find it appealing to use a class device to resolve cases involving 'fraud perpetrated on numerous persons by the use of similar misrepresentations.'  The Court is persuaded that this case is more similar to the latter circumstance and finds common issues of law and fact predominate over questions affecting individual members as to the provision of internet access service to AOL's customers."); *Schojan v. Papa Johns Int'l, Inc.*, 2014 WL 7178102, at *7-8 (M.D. Fla. Dec. 16, 2014) (certifying plaintiffs' claim that "Defendants have negligently misrepresented to customers that sales tax was lawfully due on delivery fees when the customer had the option to avoid the fee by picking up the pizza."); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014) (certifying fraud and negligent misrepresentation claims).

As the Eleventh Circuit has recognized, "*based on the nature of the misrepresentations at issue, the circumstantial evidence that can be used to show reliance is common to the whole class*. ... Consequently, while each plaintiff must prove reliance, he or she may do so through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004) (finding common issues predominated) (emphasis added). Here, because Defendant uniformly represented EPA Fuel Economy Estimates that were in fact miscalculated and overstated to all Class members in its advertising materials and on the Monroney Sticker for each Mini Cooper sold, the same evidence will determine Defendant's liability with respect to Plaintiffs' fraud and negligent misrepresentation claims as to all Class members.

### 5.     Damages Can Be Calculated On A Classwide Basis

In discovery, Plaintiffs intend to provide the Court with evidence that damages can be calculated classwide, including with the assistance of expert witnesses. Although Plaintiffs have not yet engaged in fact or expert discovery since discovery has not yet commenced, Plaintiffs initially offer the following framework.[7]

---

[7]This framework is applicable to all of Plaintiffs' claims since each uses the same measure of damages, namely difference in value damages. *See Rosen v. J.M. Auto Inc.*, 2008 WL 9901501, at *5 (S.D. Fla. Mar. 6, 2008) (for FDUTPA, "'actual damages' are defined as 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered ...'") (quoting *Collins v. DaimlerChrysler Corp.*, 894 So.2d 988, 990 (Fla. 5th Dist. Ct. App. 2004)); *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 102 (D.N.J. 2011) ("Under the [New Jersey] Consumer Fraud Act, as in contract law, there are many possible ways to prove the difference in value between the product received and the product promised. Often, plaintiffs will calculate the difference by reference to the market price of making the product actually received like the one warranted, either by modification or replacement."); *Bentley v. Volkswagen Grp. of Am., Inc.*, 2013 WL 5927974, at *1 (M.D. Fla. Nov. 5, 2013) ("Because the MMWA is 'virtually silent' as to measuring damages, courts must look to state law. *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1298-99 (11th Cir. 1999) (citation and internal quotation marks omitted). Under Florida law, "'[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted....'" Fla. Stat. § 672.714(2) ("The measure of damages for breach of

Here, compensatory damages consist of the actual cost of operation related to fuel efficiency versus what was represented by Defendant.  To calculate the additional fuel costs, Plaintiffs may use the same EPA assumptions that were used to calculate the annual fuel costs based on the overstated EPA Fuel Economy Estimates:  15,000 miles per year at $3.75 per gallon.[8]  Multiplying 15,000 miles by $3.75 and dividing the resulting number by the overstated EPA Fuel Economy Estimates for the Mini Coopers calculates their annual fuel cost based on the overstated EPA Fuel Economy Estimates.  For example, for Class members who own or lease a Mini Cooper S with a manual transmission, this calculation is:

Annual Fuel Cost = (15,000 miles x $3.75 per gallon) / 29MPG

Annual Fuel Cost = $1,939.66

Multiplying 15,000 miles driven by $3.75 and dividing the resulting number by the EPA-corrected EPA Fuel Economy Estimates for each Mini Cooper variant would give the corrected annual fuel cost.  For example, for Class members who own or lease a Mini Cooper S with a manual transmission, this calculation is

Corrected Annual Fuel Cost = (15,000 miles x $3.75 per gallon) / 28 MPG

Corrected Annual Fuel Cost = $2,008.93

Accordingly, these Class members will incur $69.27 in additional fuel costs per year as a direct result of Defendant's overstated EPA Fuel Economy Estimates:

Annual Increased Fuel Cost = Corrected Annual Fuel Cost – Annual Fuel Cost

---

warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.").  With respect to unjust enrichment, Defendant improperly retained the difference in value of the Mini Coopers attributable to the overstated EPA Fuel Economy Estimates.

[8] The corrected Monroney Sticker for Plaintiffs' Mini Cooper contains an annual fuel "[c]ost estimate[] based on 15,000 miles per year at $3.75 per gallon."  *See* Dkt. No. 14-3.

Annual Increased Fuel Cost = $2,008.93 – $1,939.66

Annual Increased Fuel Cost = $69.27

To arrive at a total damages figure per Class member, the annual increased fuel cost for each Mini Cooper variant will be multiplied by a to-be-determined term of ownership. These figures can be aggregated to a total classwide damages figure by multiplying the total damages for each Mini Cooper variant by the number of purchasers or lessees for that variant. These figures would then be discounted by a to-be-determined discount rate in order to arrive at a net present value. [9]

Furthermore, Class members are entitled to treble damages under the NJCFA. *See* N.J.S.A. § 56:8-19 ("In any action under this section the court *shall*, in addition to any other appropriate legal or equitable relief, *award threefold the damages* sustained by any person in interest.") (emphasis added); *see also Nikolin v. Samsung Electronics Am., Inc.*, 2010 WL 4116997, at *3 (D.N.J. Oct. 18, 2010) ("Additionally, ... under the NJFCA, treble damages are mandatory."). As such, Class members' total damages under the NJCFA would be calculated under the method outlined above, and then tripled.

Notably, this framework was endorsed by Judge Wu in *In re Hyundai and Kia Fuel Economy Litigation* in assessing the adequacy of the settlement agreement as compared to the total potential recovery were the case tried. [10] *In re Hyundai and Kia Fuel Economy Litig.*, No.

---

[9] Plaintiffs also seek to recover damages for the loss in the resale value of the Mini Coopers attributable to the overstated EPA Fuel Economy Estimates. *See* Compl. ¶¶ 35, 44, 58, 67, 82, 94, 105, 114. These damages can be calculated under the same framework on a prospective basis by multiplying the annual increased fuel cost by the difference between the Mini Coopers' lifespan and the expected length of Class members' ownership:

> Loss in Resale Value = (Vehicle Lifespan – Average New Car Ownership Period) x Annual Increased Fuel Cost

This figure would then be discounted to arrive at a net present value.

[10] *In re Hyundai and Kia Fuel Economy Litig.* is nearly identical to the case at bar as both concern overstated EPA Fuel Economy Estimates due to a manufacturer's failure to correct perform tests according to proper standards. *See In re Hyundai and Kia Fuel Economy Litig.*,

13-ml-2424-GW-FFM, Dkt. No. 317 at 2-3 (C.D. Cal. Aug. 21, 2014) ("As to the total potential recovery in this case, the Settling Plaintiffs have submitted some rough calculations to help the Court evaluate the fairness of the settlement against the possible recovery available to the class if they proceed with litigation. ... This amount represents the approximate potential compensatory damages."); *id.*, Dkt. No. 319 (C.D. Cal. Aug. 29, 2014) (order granting preliminary approval).

### B. Class Litigation Is Superior To Other Methods Of Adjudication

Finally, a class action is the superior method of adjudication. In many respects, the predominance analysis has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the Plaintiffs' claims. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). Here, the proposed class members' claims are predicated on a common set of facts and concern the same product and advertising. Therefore, a class action will be superior to other available methods for fairly and efficiently adjudicating this controversy.

Specifically, Rule 23(b)(3) provides four factors for the Court's consideration:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3). All of these factors favor class treatment here.

---

Dkt. No. 267 at 1 (C.D. Cal. June 26, 2014) ("This litigation arises out of misstatements by Defendants Hyundai Motor America ('HMA') and Kia Motors America ('KMA') ('Defendants') regarding the fuel economy of certain vehicles in their advertisements and Monroney stickers. It is generally claimed that the inaccurate information arose from changes to the process used during fuel efficiency testing, and in some cases, mistakes in the testing process. These process changes and mistakes affected all vehicles of a single model uniformly, as the tests were used to create fuel efficiency numbers that were different from what they should have been had the tests been correctly performed according to proper standards.").

Importantly, it would cost Class members much more to litigate an individual case than they could recover in damages.  *See Wrigley*, 2010 WL 2401149, at *5 ("if the Proposed Class is not certified, it is likely that potential class members would lack incentive to pursue their claims individually due to the small awards involved.").  The relatively small amount at issue for each Class member renders individual litigation infeasible, but a class action offers the potential for meaningful redress to the Class.  Moreover, this case is manageable as a class action.  Liability will be established through evidence that Defendant did not calculate the EPA Fuel Economy Estimates for the Mini Coopers in conformance with the EPA's requirements, thereby overstating those EPA Fuel Economy Estimates, without the need for individualized inquiries to determine Class members' entitlement to relief or the amount of that relief.

## VII.   PLAINTIFFS' PRELIMINARY PROPOSED NOTICE PLAN

Pursuant to Local Rule 4.04(b), Plaintiffs must "also suggest a means of providing, and defraying the cost of, the notice required by Rule 23(c)(2), Fed. R. Civ. P."  L.R. 4.04(b).

Given the current juncture of this case, Plaintiffs suggest using the notice plan approved by Judge Wu in *In re Hyundai and Kia Fuel Economy Litig.*:

> Notice will be provided by first-class mail, sent to every Class Member whose current address is reasonably ascertained from an available R.L. Polk & Co. database.  The mailing shall be in the form of a postcard.  Further, [BMW] dealerships will provide hand-out flyers to Class Members who bring their vehicles in for service, further extending the reach of the notice.

*In re Hyundai and Kia Fuel Economy Litig.*, No. 13-ml-2424-GW-FFM, Dkt. No. 267 at 15-16 (C.D. Cal. June 26, 2014).  Given the similarities between *In re Hyundai and Kia Fuel Economy Litig.* and this case, Plaintiffs' proposed notice plan is designed to provide effective notice to Class members while keeping the costs minimal.  To the extent discovery reveals Defendant is in possession of Class members' email addresses, Plaintiffs further propose that direct notice via email be used in lieu of direct notice via first-class mail.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to certify the Class and the Florida Subclass.  In the alternative, Plaintiffs request that the Court grant them the opportunity to renew and supplement this motion after discovery has commenced.

Dated:  February 5, 2015

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:      */s/ Scott A. Bursor*
             Scott A. Bursor

Scott A. Bursor (State Bar No. 68362)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com

*Counsel for Plaintiffs*