IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KAREN JARVIS AND MICHAEL JARVIS,
Individually and on behalf of all others
similarly situated,

    Plaintiffs,

vs.        CASE NO. 2:14-CV-654-FTM-29-CM

BMW OF NORTH AMERICA, LLC,

    Defendant.
_____/

**<u>DEFENDANT'S MOTION TO DISMISS</u>**
**<u>PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT</u>**
**<u>AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION. ...................................................................................................1

I.    STATEMENT OF RELEVANT FACTS .................................................................2

III.    STANDARD OF REVIEW .....................................................................................4

IV.    ARGUMENT ...........................................................................................................5

    A.    PLAINTIFFS' INDIVIDUAL CLAIMS SHOULD BE DISMISSED. .......................5

        1.    Plaintiffs' Claim For Unjust Enrichment Should Be Dismissed. .........................5

        2.    Plaintiffs' Claim For Violation of the Florida Unfair and Deceptive Trade Practices Act Should Be Dismissed. ....................................................................6

        3.    The New Jersey Consumer Fraud Act Does Not Apply To Florida Residents. Plaintiffs' Claim Under the New Jersey Consumer Fraud Act Should be Dismissed. ............................................................................................................7

        4.    Plaintiffs' Warranty Claims Should Be Dismissed. ............................................8

    B.    PLAINTIFFS' CLASS-ACTION ALLEGATIONS SHOULD BE DISMISSED...12

        1.    Florida Law Applies To Plaintiffs' Claims But Cannot Apply Nationwide. .....13

        2.    Plaintiffs' Claims For Violation of FDUTPA, Fraud, and Negligent Misrepresentation Are Unsuited for Class Treatment. .......................................15

V.    CONCLUSION......................................................................................................17

**I. INTRODUCTION.**

Defendant, BMW of North America, LLC ("BMW NA"), by and through its undersigned counsel, and pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, hereby files this Motion to Dismiss Plaintiff's First Amended Class Action Complaint and, in support thereof, states as follows:

This case is about motor-vehicle fuel-economy estimates. Specifically, it is about a one-mile-per-gallon revision to the fuel-economy estimates for Plaintiffs' model-year 2014 MINI Cooper 3-door automatic-transmission vehicle.

In their initial Complaint, Plaintiffs claimed that the MINI fuel-economy estimates were a guarantee that their vehicles would get the estimated fuel economy. BMW NA moved to dismiss that initial Complaint, demonstrating in its supporting memorandum that fuel-economy estimates are not guarantees. (Doc. #14.) In opposition (Doc. #21), Plaintiffs espoused an entirely new theory of the case – that their MINI Cooper came with a guarantee that the fuel-economy estimates were calculated in accordance with the regulations promulgated by the EPA – a fact of which this Court took note, and rejected, because that new argument was not based on any facts in the initial Complaint. (Doc. #40, p. 8 n2.) Rather, the Court agreed with BMW NA that fuel-economy estimates are not guarantees and dismissed Plaintiffs' initial Complaint.

Plaintiffs have now filed a First Amended Class Action Complaint ("FAC"), ostensibly to cure the defect identified by the Court. (Doc. #41.) Plaintiffs have principally changed the phrase in their initial Complaint – that the fuel-economy estimates were "a guarantee that their MINI would get" the estimated miles-per gallon – to an assertion that BMW NA guaranteed that the fuel-economy estimates "were calculated in accordance with the EPA's testing requirements" resulting in "overstated and misrepresented" fuel-economy estimates. *E.g.* FAC, ¶¶ 2, 17, 52, 53, 93, 103.

1

Plaintiff's FAC still fails to state a viable claim and should be dismissed. That is because nothing in the FAC, the documents appended to it, or the EPA website statements referenced in it supports Plaintiffs' contention that the MINI fuel-economy estimates were *not* calculated in accordance with EPA regulations. Rather, those documents and references indicate that EPA's audit of the MINI fuel-economy estimates "obtained values different from those BMW submitted to EPA for certification" (FAC, Ex. A) and had "road-loads…which exceeded EPA audit criteria when compared to the values originally reported by BMW at the time of certification." (FAC, ¶3) (quoting http://www.epa.gov/fueleconomy/updates.htm).

Simply put, Plaintiffs are asking the Court to make a leap of faith from the statement that certain values differed to a conclusion that BMW failed to follow EPA's testing protocols – indeed, *intentionally* failed to follow EPA's testing protocols. Plaintiffs' claims for statutory consumer fraud, common-law fraud and misrepresentation, breach of warranty, and unjust enrichment must be based on facts, not speculation. And that's all the more so when they seek to pursue a class action. Plaintiffs' FAC fails and should be dismissed.

## II.  STATEMENT OF RELEVANT FACTS.[1]

Plaintiffs reside in Arcadia, Florida. (FAC, ¶ 17.)  In March 2014, Plaintiffs purchased a model year 2014 MINI Cooper 3-door with an automatic transmission from a MINI Cooper dealer in Fort Myers, Florida for $27,000.[2]  (*Ibid*.)  Plaintiffs allege that BMW NA misrepresented the fuel economy of model year 2014 MINI Cooper and MINI Cooper "S" 3-door automobiles (the "Vehicles"). (FAC, ¶ 1.)  Plaintiffs assert that BMW NA's advertising for

---

[1] Solely for the purposes of this motion to dismiss, BMW NA accepts as true the well-supported factual allegations in Plaintiffs' FAC.

[2] Plaintiffs refer to MINI vehicles as having manual and "semi-automatic" transmissions. MINI vehicles are equipped with manual and *automatic* transmissions. This confused terminology is apparently carried over from Plaintiffs' reliance on an EPA press release.

2

the Vehicles, including BMW NA's website and promotional brochures, overstated the Vehicles' estimated fuel economy in miles per gallon ("mpg"), thereby leading to higher-than-promised fuel consumption. (FAC, ¶ 2.) According to Plaintiffs, internal testing and investigation should have revealed the problem, but BMW NA willfully failed to identify the overstatements. (FAC, ¶ 14.) Plaintiffs also claim that the MINI dealer from which they purchased their 2014 MINI Cooper acted as an agent of BMW NA and/or with knowledge and approval of BMW NA. (FAC, ¶ 17.)

Plaintiffs now assert their car came with a guarantee that the car's "Fuel Economy Estimates were calculated in accordance with the EPA's testing requirements." (FAC, ¶ 17.) As a result, they claim they purchased their car for a higher price and have subsequently incurred higher fuel costs. (*Ibid*.) In support of their claims, Plaintiffs rely upon a United States Environmental Protection Agency ("EPA") directive requiring that BMW NA revise the fuel-economy labels ("Monroney stickers") for the Vehicles. (FAC, ¶ 3.) While Plaintiffs claim that "BMW failed to adhere to [EPA's] standardized requirements in calculating the EPA Fuel Economy Estimates," the allegations in the FAC do not support this assertion. (FAC, ¶ 2.) Rather, on October 22, 2014 (after Plaintiffs purchased their vehicle), the EPA issued a press release stating that it had conducted a fuel-economy audit on the Vehicles and obtained values that differed from those that BMW NA had originally submitted to the EPA for certification. (FAC, Exhibit A.) BMW NA and the EPA both conducted testing and as a result the EPA required BMW NA to re-label four models of the Vehicles with marginally lower fuel-economy estimates. (*Ibid*.). Despite Plaintiffs' representations about the EPA's findings, the EPA's statements did not comment on the accuracy of BMW NA's original testing, only that the audit results differed. (*Ibid.*; *see also* FAC ¶8).

3

Plaintiffs contend BMW NA violated the 49 U.S.C. § 32908(b)(1) of the Energy Policy and Conservation Act ("ECPA") "by attributing EPA Fuel Economy Estimates to the Mini [sic] Coopers that were not actually calculated in compliance with the EPA's testing methods." (FAC, ¶ 8.)  Based upon this alleged violation of the EPCA, Plaintiffs seek to pursue against BMW NA the following claims: (1) Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*; (2) Breach of Express Warranty; (3) Breach of Implied Warranty of Merchantability; (4) Unjust Enrichment; (5) Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*; (6) Violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1 *et seq.*; (7) Negligent Misrepresentation; and (8) Common-Law Fraud.  Plaintiffs seek to represent a class defined as "all persons in the United States who purchased or leased the MINI Coopers," ("the Nationwide Class") with a subclass of all class members who made such a purchase in Florida ("the Florida Sub-Class"). (CAC, ¶ 23.)

For the reasons set forth below, each of these claims should be dismissed.

### III. STANDARD OF REVIEW.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197 (2007); *Christopher v. Hanbury*, 536 U.S. 403, 406 (2002); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).  Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the well-supported factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992).  The Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint. *Marsh v. Butler County,* 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001).  In order to survive a

motion to dismiss under Rule 12(b)(6), a plaintiff must plead "more than mere labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007). Indeed, "a formulaic recitation of the elements of a cause of action will not do." *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Instead, *Twombly* "require[es] a flexible 'plausibility standard,' which obliges a pleader to amply a claim with some factual allegations in those contexts where such amplification is needed to render the claim possible." *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007), *rev'd o.g. sub nom. Ashcroft v, Iqbal,* 556 U.S. 662 (2009).

**IV. ARGUMENT.**

    A.  **PLAINTIFFS' INDIVIDUAL CLAIMS SHOULD BE DISMISSED.**

        1.  **Plaintiffs' Claim For Unjust Enrichment Should Be Dismissed.**

Plaintiffs' claim for unjust enrichment is simply duplicative of their other claims. Under established Florida law, a claim for unjust enrichment fails where there is an existing contractual or legal remedy. *ThunderWave v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997). Unjust enrichment is a claim in equity and does not exist when other adequate legal remedy exists for the parties. *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326–27 (S.D. Fla. 2000); *see also Jovine v. Abbot Laboratories, Inc.,* 795 F. Supp. 2d 1331, 1341-42 (S.D. Fla. 2011). A plaintiff cannot plead a claim for unjust enrichment in the alternative to a breach of contract claim unless he or she disputes the existence of the contract. *Zarrella v. Pacific Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010). Here Plaintiffs *do* allege a contract claim for breach of express warranty. Moreover, Plaintiffs have an adequate legal remedy by virtue of their consumer-fraud, common-law fraud, and common-law misrepresentation claims. Thus, Plaintiffs' unjust-enrichment claim should be dismissed.

## 2. Plaintiffs' Claim for Violation of the Florida Unfair and Deceptive Trade Practices Act Should be Dismissed.

Plaintiffs' FDUTPA claim is premised on their argument that the MINI Fuel Economy Estimates were not calculated in accordance with EPA regulations, therefore violating FTC regulations, resulting in a *per se* violation of FDUTPA. *See* FAC, ¶¶ 80-87. As explained above, that contention is based on a leap of faith from the statement that certain values differed to a conclusion that BMW NA failed to follow EPA's testing protocols. In other words, Plaintiffs appear to contend that because the Fuel Economy Estimates differed, resulting in a one-mile-per-gallon adjustment for Plaintiffs' vehicle, *ipso facto* BMW NA failed to follow the EPA's regulations.[3] This is just the sort of "unadorned, the-defendant-unlawfully-harmed-me" contention that *Twombly* and *Iqbal* are meant to eliminate. *Iqbal*, 556 U.S. at 678. Plaintiffs' claims must be based on facts, not speculation. But speculation is all Plaintiffs offer the Court. The Court should not speculate, and Plaintiffs' FDUTPA claim should be dismissed.

---

[3] It should be borne in mind that BMW NA's advertisements, brochures, and Monroney stickers for the MINI vehicles included the EPA's mandatory disclosure statement: "**Actual mileage will vary with options, motoring conditions, motoring habits and vehicle operation.**" 40 C.F.R. § 600.302-12(4) (emphasis added). Indeed, this legally-mandated language is contained in the BMW NA webpage that Plaintiffs' FAC specifically references -- although the snippet reproduced in Plaintiffs' FAC omits the reference to EPA fuel-economy estimates. (FAC, ¶ 10.) (A true and correct copy of the *full* webpage is attached hereto as **Exhibit A**). In accordance with federal law, the advertisement states: "MPG values are based on preliminary EPA estimates for model year 2015. Actual mileage will vary with options, driving conditions, driving habits and vehicle operation." (*Ibid.*). This same language is included in other BMW advertisements. (A true and correct copy of a 2014 advertisement for the Vehicles is attached hereto as **Exhibit B**). Moreover, the Monroney sticker gives the following disclosure: "Actual results will vary for many reasons, including driving conditions and how you drive and maintain your vehicle." (A true and correct copy of the Monroney sticker for Plaintiffs' vehicle is attached hereto as **Exhibit C**). The Fuel Economy Estimates are just that – estimates – and BMW NA's advertising makes clear that consumers' actual mileage *will vary.*

### 3. The New Jersey Consumer Fraud Act Does Not Apply To Florida Residents. Plaintiffs' Claim Under the New Jersey Consumer Fraud Act Should be Dismissed.

Plaintiffs are Florida residents. The New Jersey Consumer Fraud Act is inapplicable to their claims. The plaintiffs in *Berry v. Budget Rent A Car Systems, Inc.* attempted to bring claims for violation of "the New Jersey Consumer Fraud Act, the Florida Deceptive and Unfair Trade Practices Act, the North Carolina Unfair and Deceptive Trade Practices Act, and substantially similar consumer fraud laws in certain other states" amongst others. 497 F. Supp. 2d 1361, 1363 (S.D. Fla. 2007). Plaintiffs there were residents of Florida and North Carolina; Budget was a Delaware corporation with a principal place of business in New Jersey. *Id*. at 1364. Budget moved to dismiss the claims. Because it was sitting in diversity, the court was required to engage in a choice-of-law analysis for each claim. *Ibid.* Applying Florida's "most-significant-relationship" test, *Trumpet Vine Investments v. Union Capital Partners*, 92 F.3d 1110, 1115–16 (11th Cir. 1996), the court determined that

> it should apply the law of the state in which each Plaintiff rented a vehicle, rather than the law of New Jersey, the state in which Budget is headquartered. The Defendant made, and Plaintiffs received, the alleged misrepresentations at each individual Budget rental center when Plaintiffs rented the vehicles. Plaintiffs acted in reliance upon the alleged misrepresentations in those states, and Plaintiffs are domiciled in those states. The place where the tangible thing which is the subject of the transaction—the rental vehicle—is located, for each rental, is the state in which it was rented. Finally, Plaintiffs were each to render performance under the rental contract in the states in which they rented the vehicles. Although Defendant Budget is headquartered in New Jersey, this one factor alone cannot overcome the weight of the other factors.

*Berry*, 497 F. Supp. 2d. at 1365-66 (footnote omitted).

Likewise, the Third Circuit Court of Appeals has held that the NJCFA cannot apply to claims of non-New Jersey residents whose only connection with New Jersey is the fact that the defendant was located there. *Maniscalco v. Brother Int'l (USA) Corp.,* 709 F.3d 202 (3d Cir.

7

2013).[4] There, the court "adopt[ed] the overwhelming majority of courts' application of New Jersey choice-of-law rules under similar circumstances." 709 F.3d at 209 (citations omitted). The court disagreed with cases applying New Jersey law to class actions involving out-of-state consumers based simply upon the defendant's location in New Jersey, in particular *In re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46 (D.N.J. 2009). As the Third Circuit held:

> While, to be sure, New Jersey has an interest in deterring misconduct by corporations headquartered within its borders, it is far from clear that this interest would be sufficient to outweigh other significant contacts with a plaintiff's home state. New Jersey's deterrent interest might well be served by actions involving in-state plaintiffs or actions involving additional contacts within New Jersey without opening the floodgates to nation-wide consumer fraud class actions brought by out-of-state plaintiffs involving transactions with no connection to New Jersey other than the location of the defendant's headquarters.

709 F.3d at 210; *see also, id.* at 208 n.3.

Here, all of the factual circumstances, with the exception of BMW NA's location, took place in Florida. Plaintiffs are Florida residents, they purchased a vehicle from a MINI Cooper dealership in Florida, they received and reviewed and relied upon BMW NA's advertisements in Florida, and they suffered their alleged damages in Florida. Like the plaintiffs in *Berry* and *Maniscalco*, Plaintiffs here have no connection to New Jersey other than the fact that BMW NA is located there. Consequently, Plaintiffs cannot invoke the protections of the NJCFA, and this claim should be dismissed.

---

[4] Like Florida, New Jersey also applies the "most-significant-relationship" test. *P.V. v. Camp Jaycee*, 962 A.2d 453 (N.J. 2008).

### 4. Plaintiffs' Warranty Claims Should Be Dismissed.

Plaintiffs assert three warranty-based claims: Violation of the Magnuson-Moss Warranty Act, breach of express warranty, and breach of implied warranty of merchantability. These claims fail.

The MMWA defines a written warranty as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time; or
>
> any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,
>
> which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product

15 U.S.C.A. § 2301(6). Thus, the MMWA applies to (1) a written guarantee that a product would be defect free but contained a defect or would meet a specified level or performance over a specified period of time but did not; or (2) a written agreement to refund, repair, replace, or remedy a product that does not conform to the specifications in that specific agreement.

Plaintiffs claim BMW NA violated the MMWA because the MINI fuel-economy estimates were "miscalculated and overstated." (*E.g.*, FAC, ¶¶ 34, 38.) Plaintiffs do not claim that their MINI contains a defect, that it failed to meet a specified level of performance for a specific period of time, or that they and BMW NA entered into a written agreement setting forth specifications that the vehicle failed to meet. In the absence of such allegations, Plaintiffs have failed to state a claim under the MMWA. *See In re Shop-Vac Marketing and Sales Practices*

9

*Litigation,* 964 F. Supp. 2d 355, 362 (M.D. Pa. 2013). Plaintiffs' claim for violation of the MMWA must be dismissed.

Further, the MMWA does not supplant state Uniform Commercial Code law. *Ocana v. Ford Motor Co.*, 992 So.2d 319, 323 (Fla. 3rd DCA 2008) (citing *Mesa v. BMW of North America, LLC*, 904 So.2d 450, 455 (Fla. 3rd DCA 2005)). Rather, "the MMWA modifies the applicability and operation of the UCC and, to the extent applicable, supersedes inconsistent provisions of the UCC." *Mesa*, 904 So.2d at 455 (citation omitted). The MMWA "creates a federal private cause of action for consumers damaged by the failure of a warrantor to comply with any obligation *under a written warranty*." *Ocana*, 992 So.2d at 323 (emphasis added).

Under Florida law, privity of contract is generally required in order to pursue a claim for breach of an express (or implied) warranty. *Levine v. Wyeth, Inc.*, 684 F. Supp. 2d 1338, 1345 (M.D. Fla. 2010) (collecting cases). However, the MMWA removes that privity requirement for express-warranty claims, allowing a plaintiff who is not in direct privity with the warrantor to pursue a claim for breach of that express written warranty. *American Honda Motor Co., Inc. v. Cerasani*, 955 So.2d 543, 545 (Fla. 2007) ("Congress enacted the MMWA to enhance the enforceability of warranties on consumer products and protect the 'ultimate user of the product.'") (quoting *O'Connor v. BMW of North America, LLC*, 905 So.2d 235 (Fla. 2nd DCA 2005)) (permitting lessee to enforce terms of Honda's new vehicle limited warranty).[5] The

---

[5] *O'Connor* and *Mesa* also involved a lessee seeking to enforce the terms of BMW NA's new vehicle limited warranty. *See*, *O'Connor*, 905 So.2d at 241 ("O'Connor… is entitled, both by the terms of the warranty and under applicable state law, to enforce the manufacturer's warranty."); *Mesa*, 904 So.2d 456-57 (finding Mesa entitled to "enforce BMWNA's 2001 New Vehicle Limited Warranty…"). *Ocana* also involved enforcement of a manufacturer's new vehicle limited warranty. 992 So.2d at 322 ("The vehicle was delivered with a New Vehicle Limited Warranty from the manufacturer…"); *id*. at 314 ("The limited express warranty before us provides that Ford will pay for repairs needed to correct defects in materials and workmanship…").

problem with Plaintiffs' MMWA express-warranty claim is that it is not based on a purported violation of the MINI new vehicle limited warranty or a written undertaking between Plaintiffs and BMW NA. Consequently, Plaintiffs' express-warranty claim falls outside the MMWA's purview.

Plaintiffs' state-law claims for breach of express warranty not premised on the manufacturer's written warranty and for breach of implied warranty of merchantability fail because Plaintiffs are not in privity with BMW NA, as they purchased their vehicle from an independent MINI dealership. *Levine*, 684 F. Supp. 2d 1345 (privity required for state-law express- and implied-warranty claims); *Mesa*, 904 So. 2d at 458 ("The MMWA does not supplant state law privity requirements for implied warranty claims. Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity.") (citations omitted); *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (under Florida law, plaintiff must be in privity of contract to recover under theories of breach of express or implied warranties) (citing *Kramer v. Piper Aircraft Corp.*, 520 So.2d 37 (Fla. 1988); *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla. 1976)); *Brophy v. DaimlerChrysler Corp.*, 932 So. 2d 272, 274 (Fla. DCA 2005) ("[A] plaintiff cannot recover economic losses for breach of an implied warranty in the absence of privity").

Plaintiffs are not in privity with BMW NA and, therefore, cannot pursue claims for breach of express warranty not based on the manufacturer's written warranty or for implied warranty under Florida law. And, while Plaintiffs attempt to establish privity by baldly asserting that the MINI dealership from whom they purchased their vehicle was an agent of BMW NA (CAC, ¶ 12), Florida's courts have rejected such "end-runs" around privity. *Ocana*, 992 So.2d. at 325-26 ("The MMWA does not supplant state law privity requirements for implied warranty

claims. Recognizing this obstacle, Ocana alleges that Warren Henry is a Ford agent… *Ocana cannot execute an end-run around Florida's historic privity requirement by employing principal-agent theory* in this case.") (emphasis added) (citation omitted).[6]

Plaintiffs' claims for violation of the MMWA and breach of express and implied warranty of merchantability under Florida law fail and should be dismissed.

### B. PLAINTIFFS' CLASS-ACTION ALLEGATIONS SHOULD BE DISMISSED.

If Plaintiffs' individual claims are not dismissed in their entirety – as they should be – their nationwide class-action allegations should be dismissed, as well as their Florida Sub-Class claims for violation of the FDUTPA, fraud, and negligent misrepresentation.

---

[6] Plaintiffs' implied-warranty claim fails for the additional reason that they do not claim their vehicle fails to perform its basic purpose. "In order to be merchantable under Florida law, [the product] must have passed without objection in the trade under the contract description, be of fair average quality, and be fit for the ordinary purposes for which such goods are used. *The tests of merchantability are standards of minimal quality measured in accordance with the standards of the trade.*" *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1099 (11th Cir. 1983) (footnote omitted) (citation omitted) (emphasis added). The term merchantability has been held to mean that a product "satisf[ies] a minimum level of quality," *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997), or that it is "reasonably fit for the general purpose for which it is manufactured and sold." *Henningsen v. Bloomfield Motors, Inc.*, 161 A.2d 69 (1960). The "general purpose" of a passenger vehicle is "providing transportation for its owner." *Sheris v. Nissan North America Inc.*, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008). Plaintiffs here do not claim that their vehicle does not provide transportation. *E.g.*, *Business Radio, Inc. v. Relm Wireless Corp.*, 373 F. Supp. 2d 1317, 1322-22 (M.D. Fla. 2005) ("To be merchantable, goods 'must have passed without objection in the trade under the contract description, be of fair average quality, and be fit for the ordinary purposes for which such goods are used.' Here, Business Radio received what it paid for — 73 Relm radios fitting the model description DPH 5102X. *Business Radio does not contend that the Relm radios fail to pass as radios in ordinary use... Business Radio's claim for breach of implied warranty of merchantability is meritless.*") (quoting *Royal Typewriter*, 719 F.2d at 1099) (emphasis added).

And insofar as Plaintiffs may contend that their MINI did not "conform to the promises or affirmations of fact made on the container or label," Fla. Stat. §672.314(2)(f), this Court has already determined that fuel-economy estimates are not promises, *see* Doc. # 40, nor could an "estimate" ever be construed as an "affirmation of fact."

### 1. Florida Law Applies To Plaintiffs' Claims But Cannot Apply Nationwide.

Plaintiffs seek to represent a class of "all persons in the United States who purchased or leased" model year 2014 MINI Cooper vehicles. Plaintiffs seek to pursue claims on a nationwide basis for violation of the MMWA, breach of express warranty, breach of implied warranty, unjust enrichment, the NJCFA, negligent misrepresentation, and fraud. They cannot: Florida's courts have made clear that, under Florida's choice-of-law rules, Florida plaintiffs are protected by Florida law, but they cannot extend those protections to residents of other states, nor can they invoke those other states' laws to prosecute claims under them on behalf of absent, out-of-state members of the putative class. As such, Plaintiffs cannot represent a nationwide class and this action should appropriately be converted into a single-state class action – at best.

As discussed above, Florida applies the "most significant relationship" test in determining choice of law, as set forth in the Restatement (Second) of Conflict of Laws. *Trumpet Vine Investments*, 92 F.3d at 1115–16. The applicable choice-of-law principles provide that the court take into account the "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145 (1971). The Restatement also provides specific choice-of-law principles for fraud and misrepresentation claims in Section 148, which provides:

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
> > (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

13

> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971) (cited in *Trumpet Vine*, 92 F.3d at 1118.)

Thus, in *Berry*, the court applied Florida's choice-of-law principles in a case – like this – brought by Florida residents against a New Jersey business, and determined that Florida – not New Jersey – law governed those plaintiffs' claims. *Berry*, 497 F. Supp. 2d at 1365-66. Further, the court held that those plaintiffs could not pursue claims under the laws of other states – even if substantially similar to Florida law – because only Florida law applied to them. *Id*. at 1369. *See also Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090, 1094-94 (Fla. 4th DCA 2003) (affirming trial court's refusal to certify nationwide class under Florida law, noting, "[t]he alleged wrong was committed, and the damage done, at the site of the sale of appellees' products; that is, in the various states where members of the purported class made their purchases."). As another judge in this District has held:

> Various courts have recognized Constitutional or other limitations on the application of FDUTPA to non-Florida residents, or to conduct occurring in other states. See *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 228–229 (S.D. Fla. 2002) (holding the Due Process Clause and Commerce Clause prohibit the nationwide application of FDUTPA in class action suits). Florida state courts have also prevented nonresidents from bringing FDUTPA claims where the allegedly unfair or deceptive conduct did not occur within state borders. See *Coastal Physician Servs. Of Broward Cnty., Inc. v. Ortiz*, 764 So.2d 7, 8 (Fla. 4th DCA 1999) (holding non-Florida residents cannot assert FDUTPA claims); *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So.2d 1256, 1262 (Fla. 3d DCA 2000) (holding FDUTPA is available to

nonresidents when the conduct at issue occurs entirely within Florida); *Océ Printing Sys. USA, Inc. v. Mailers DataServs., Inc.*, 760 So.2d 1037, 1042 (Fla. 2d DCA 2000) (holding only residents can assert a claim under FDUTPA).

*Amar Shakti Enterprises, LLC v. Wyndham Worldwide, Inc.*, 2011 WL 3687855, at *3 (M.D. Fla. Aug. 22, 2011) (dismissing FDUTPA claim insofar as Plaintiff sought to pursue such claims on behalf of non-residents against defendants located in New Jersey because "nonresident plaintiffs cannot assert an FDUTPA claim on the basis of conduct unconnected to this state").

Plaintiffs here are Florida residents who allegedly reviewed BMW NA's advertisements in Florida, purchased their vehicle in Florida, and suffered their claimed damages in Florida. As such, Florida law – and *only* Florida law – applies to their claims. Plaintiffs cannot extend Florida law nationwide, nor may they pursue claims under the laws of any other state. For this reason, Plaintiffs' nationwide class-action allegations should be dismissed.

### 2. Plaintiffs' Claims For Violation of FDUTPA, Fraud, and Negligent Misrepresentation Are Unsuited for Class Treatment.

Fraud-based claims brought under FDUTPA, such as those here, cannot be treated on a class-wide basis because common questions of law do not predominate. *See Berenguer v. Warner-Lambert Co.,* 2003 WL 24299241 (Fla. 13th Cir. Ct., July 31, 2003). In *Berenguer*, the Court held that plaintiffs filing a FDUTPA claim must plead – and ultimately prove – that they were exposed to the advertising and marketing materials and suffered actual damages a result. *Id.* at *2. Indeed, Florida courts have generally found that claims under FDUTPA are highly individualized, which strongly works against a finding of predominance. *See O'Neill v. The Home Depot U.S.A., Inc.,* 243 F.R.D. 469, 480-81 (S.D. Fla. 2007).

While Plaintiffs here allege they were exposed to the fuel-economy estimates and that those estimates were important to them (CAC, ¶ 85), the same cannot be said of every consumer: The fact is that people purchase motor vehicles for a broad variety of reasons, not just fuel-

15

economy estimates. *See*, *e.g.*, *Oscar v. BMW of North America, LLC*, 2012 WL 2359964, at *4, *6, *8 (S.D.N.Y. 2012) (denying class certification because "vehicle purchase decisions, and, *a fortiori*, the particular price paid for those vehicles, may be based on a variety of factors. The customer's purchase decision and the negotiated purchase price cannot be assumed to rest entirely, or even partially, on [certain] disclosures to the customer…"). Determining which individuals decided to purchase or lease a Vehicle based, in some measure, on the fuel-economy estimates is a highly individualized undertaking.

Plaintiffs' claims for common-law fraud and negligent misrepresentation require proof of reliance. It is well-settled under Florida law that reliance-based claims, such as fraud and negligent misrepresentation, cannot be decided on a class-wide basis. *See Waters v. Int'l Precious Metals Corp.,* 172 F.R.D. 479, 503 (S.D. Fla. 1996) (holding that the plaintiffs "must affirmatively prove reliance on an individualized basis with respect to these claims"); *see also Hammett v. American Bankers Ins. Co. of Florida,* 203 F.R.D. 690, 700 (S.D. Fla. 2001) ("[u]nder Plaintiff's RICO theory, each class member would have to demonstrate his or her individual reliance upon the alleged misrepresentations, causing individual, not common, fact issues to predominate."). Such claims cannot be pursued on a class-wide basis.

Moreover, Plaintiffs' Class is constructed so broadly that it could encompass members who did not see *any* BMW NA advertisements, or, even if they did see them, have not suffered any actual damages, either because their vehicle is achieving the estimated fuel economy or because the fuel-economy estimate had no bearing on their purchase or lease decision. This is plainly untenable. If actual exposure to (or reliance on) the alleged misrepresentation was not required, a class could include members who could not individually bring suit to recover, generating a windfall to those class members and allowing Rule 23 to enlarge substantive rights.

*See Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2561 (2011) ("[T]he Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right'") (quoting 28 U.S.C. § 2072(b).

## V. CONCLUSION

Plaintiffs are asking the Court to make a leap of faith from the statement that certain values differed to a conclusion that BMW failed to follow EPA's testing protocols – indeed, *intentionally* failed to follow EPA's testing protocols. Plaintiffs' claims for statutory consumer fraud, common-law fraud and misrepresentation, breach of warranty, and unjust enrichment must be based on facts, not speculation. Plaintiffs' claims fail for both procedural and substantive reasons. And their class-action allegations are largely ill-suited for class-wide treatment. Plaintiffs' FAC should be dismissed.

WHEREFORE, in light of the foregoing, the BMW NA respectfully requests that the Court enter an order granting the Defendant's Motion to Dismiss, entering final judgment in the Defendant' favor on Plaintiff's First Amended Class Action Complaint and dismissing the First Amended Class Action Complaint in its entirety with prejudice, awarding the Defendant its reasonable costs of defending this action, including its reasonable attorneys' fees, and ordering such other and further relief as the court may deem warranted.

s/Mark C. Anderson
Mark C. Anderson, Esq.
Buchanan Ingersoll & Rooney PC
2235 First Street
Fort Myers, Florida 33901
Phone: 239 334 7892
Fax: 239 425 6380

>Christopher J. Dalton, Esq. (*pro hac vice*)
>Buchanan Ingersoll & Rooney PC
>550 Broad Street, Suite 810
>Newark, New Jersey 07102
>Phone: 973 273 9800
>Fax: 973 273-9430

June 9, 2015

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 9, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which served to counsel for the Defendants, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notice of Electronic Filing.

>/s/ Mark C. Anderson
>MARK C. ANDERSON, ESQUIRE
>Florida Bar No. 631922
>BUCHANAN INGERSOLL & ROONEY PC
>Counsel for *Defendant*
>  *BMW of North America, LLC*
>Post Office Box 1567
>Fort Myers, Florida  33902
>(239) 334-7892
>(239) 425-6380 (facsimile)
>mark.anderson@bipc.com